THE ORANGE SOCIETY OF THE NEW JERUSALEM, complainant,

*v.*

MARK M. KONSKI, defendant.

[Decided May 24th, 1923.]

1. In a contract for sale of real estate the day fixed for closing title, without more, is merely formal, but if it is stipulated that time is of the essence, or circumstances are persuasive that that is the case, prompt performance is essential. Where the time fixed is regarded as a formality only, and the period has gone by, or where time is of the essence and there is a waiver, time may nevertheless be made of the essence by formal demand that the title be closed by a given day; but the time given must be reasonable.

2. A period .of seven days is not a reasonable time to close a title where there are matters involved that require unusual action. The time given for performance should bear some reasonable comparison to the time which had already elapsed since the contract was executed.

On final hearing.

*Messrs. Horace* and *Henry T. Stetson,* for the complainant.

*Messrs. Howe & Davis (Mr. Edward L. Davis),* for the defendant.

BACKES, V. C.

The bill prays a specific performance of a contract to purchase land. The Orange society and Mr. Konski, on August 13th, 1921, entered into a written contract wherein the society agreed to sell to Konski a piece of property on the westerly side of Essex avenue, Orange, for $19,000. One thousand was paid down, eight thousand was to be paid on the day of the delivery of the deed, and the remaining ten thousand at a time stated, to be secured by a mortgage on the property. The property was to be free and clear of encumbrances except a certain building restriction. The closing of the title was set for October 10th. The contract has this provision, in compliance with the restriction, "As a part of the consideration of this contract the purchaser agrees that he will erect on the said premises one or more buildings, each to be of one or more floors, equal or better than the exterior design of the building erected on the northeast corner of Central avenue and Lock street." The type of building was to be approved by the society, the chief engineer of the Delaware, Lackawanna and Western Railroad and the mayor of Orange, and if either of the latter two refused or was unwilling to approve the plans, and if Konski then would not modify them so as to meet their approval, the money paid down was to be returned, but, and I quote from the contract, "If the necessary plans for the erection of the

said building are neither approved nor rejected by the 10th day of October, then the purchaser may, at his option, (1) cancel this contract, and in such event the seller agrees to return to him all moneys paid on account of the contract, or (2) take the title to the property subject to all the other terms and conditions of this contract, and in the event that he exercises the last option, the contract shall be performed within five (5) days thereafter." Neither side was ready on the appointed day. Konski had furnished a sketch of his proposed building, but the plans were not submitted until about the 25th of the month. They were approved by the engineer of the railroad and were satisfactory to the mayor, but he declined to give his approval unless a pending zoning ordinance be modified relieving the site of a ban against industrial structures. All hands, including Konski, worked industriously to have this done. Konski at length became impatient and under date of November 18th wrote to the society as follows:

"I would suggest that we agree on some definite date, say, not later than November 25th, for Mayor Lord or other interested Orange city officials to come to a final decision in reference to allowing the erection of factory on plot in question.

"In the event that no decision is arrived at on date mentioned, our negotiations will be discontinued on terms and conditions outlined in our agreement of August, 1921.

"Trusting above meets with your kind approval and that I will hear from you to that effect by return mail, &c."

There was no reply to the letter. On November 22d Konski and the representatives of the society again urged the mayor to act, but he simply reiterated his position that he would not until the ordinance was out of the way. The zoning commission made the desired amendment December 2d; on the following day the mayor approved the plans, and Konski was notified, by letter, on December 6th. Konski refused to take title, claiming that as the mayor had not approved the plans by November 25th he had the right to terminate the agreement, and that he had done so. Thereafter a formal tender of the deed was made and this action was promptly brought.

I said during the course of the argument that time was of the essence of the contract. That statement was too broad. I should have said that the assent of the engineer and the mayor was, at all events, a condition precedent to performance and that it was Konski's privilege to withdraw from the contract if his building plans were not accepted by the 10th of October. It was his right to do so arbitrarily, but he did not, and it is quite evident from what transpired that neither party regarded performance on that date imperative. Konski had not in mind that if his plans were not approved by October 10th, and the society was not minded that if the purchase price was not paid by that time, that the contract was to be at an end, if either so elected. I need not dwell longer on that phase because even if punctual performance was considered essential at the time the contract was made it was waived, and it seems to me we need look no further than the letter of November 18th. Indeed Konski relies solely upon the letter, and the failure to meet its terms, as justifying his stand. The law is that a day fixed in a contract for closing title, without more, is merely formal; but if it is stipulated that time is of the essence, or the circumstances are persuasive that that is the case, prompt performance is essential, and it is also the law that where the time fixed is regarded as a formality only, and the period has gone by, or where time is of the essence and there is a waiver, that time may nevertheless be made of the essence by formal demand that the title be closed by a given day; but the time given must be reasonable. Now, as I read Konski's letter, he did not fix November 25th as final. He suggested that the matter be closed by that day; that is, he asked the society to agree with him that it come to an end one way or another by then. The society did not agree, and I think Konski so understood it, for after writing the letter he appeared with the society's attorney before the mayor to get him to give his consent. But if I am mistaken in my interpretation of the letter, and if it is to be regarded as peremptorily fixing November 25th to make good or quit, I think Konski cannot avail himself of it as a means of

terminating the bargain. As I have indicated, to make time of the essence of the contract under such circumstances the extension, that is, the time given for performance, must be reasonable. Here but seven days were allowed. In the circumstances it was, in my judgment, too short. Konski knew what the difficulties were. He knew they could, and in all likelihood would, be overcome. He knew the mayor was standing out only on a matter of policy. He knew that the mayor would give his approval the minute the zoning commission acted and its favorable action was almost assured, and he knew of the efforts that were being made, and in these he participated. The contract for sale had been made in August to be executed in October, and I think that that period is to be considered in measuring reasonableness of time for performance. In other words, the time to elapse must bear some reasonable comparison to the time which has already elapsed. An instructive case is *King* v. *Ruckman, 20 N. J. Eq. 316.* Some of the cases upon the question as to what constitutes a reasonable time are *King* v. *Wilson (1843), 6 Beav. 124; Mitchell* v. *Wilson (1912), 2 D. L. R. (Can.) 714, 20 West L. R. 671; Smedberg* v. *More (1841), 26 Went. (N. Y.) 238,* and *Marotta* v. *Reynolds (1914), 25 Ont. Week. Rep. 833; 5 Ont. Week. N. 907,* all cited in Mr. Davis' brief. I repeat that I think the time fixed for the conclusion of the contract was entirely too short under the circumstances. Considering that three months had gone by, demand then for performance within seven days was unjustified. I think at least twenty days should have been given. The snap action by Konski was not, in my judgment, for the reason that he wanted to bring the matter to a conclusion because time was of importance to him, but rather, as I look upon it, because he wanted to back out of his contract, and he saw what he thought was his opportunity. I think his motive is pretty clearly shown by the excuses he gave on the stand, that he was ill and his financial and business affairs had undergone a change. He may have been ill; if he was, the illness was of a passing nature; and

as to adverse change in finances or in trade, that was not borne out by the testimony.

Mr. Konski will have to perform and a decree to that effect will be advised.