ROBERT G. FULLERTON ET AL. *v.* JOSEPH J. McGOWAN
(3040)

DUPONT, C. J., SPALLONE and BIELUCH, Js.

Argued December 4, 1985—decision released April 1, 1986

*Joseph J. McGowan,* pro se, the appellant (defendant).
*Reuben S. Midler,* for the appellees (plaintiffs).

BIELUCH, J. The defendant has appealed from a judgment for the plaintiffs in an action on a contract for

the purchase and sale of land with a house then under construction thereon in Newtown. The pro se defendant, who was the owner and builder of the house, has raised four claims of error with regard to the court's findings and award of damages.[1] We find no error.

The facts are not in dispute. The plaintiffs contracted on August 23, 1978, to purchase the property in question from the defendant for $108,000. This purchase price reflected an agreement between the parties pursuant to which the plaintiffs undertook to perform some of the work on the house themselves. During the negotiations prior to the written agreement, the defendant orally indicated that the house would be ready for occupancy on or about October 15, 1978, but this was extended to October 30, 1978, or "such other date . . . as the parties may mutually agree upon" in the written contract.

Prior to October 30, 1978, the plaintiff Robert G. Fullerton visited the property often, on some of these occasions doing some of the construction work which he had agreed to do in reduction of the purchase price. On that date, Fullerton visited the property again and observed that the interior walls, the septic system, the driveway and the front steps had not been completed, and that the plumbing and kitchen fixtures, the heating unit and the oil tank had not been installed. Also, the electricity had not been connected. For these reasons, the defendant could not provide the plaintiffs with a certificate of occupancy, and the closing was therefore delayed. The defendant then informed the plaintiffs that he would complete the house before Thanksgiving. Fullerton, who had previously been in the real estate business, did not object to the delay, nor to a

---

[1] The fifth issue raised in the defendant's preliminary statement of issues claiming that the court erred in failing to find for the defendant on the counterclaim was not briefed and is considered abandoned. *State* v. *Samaha,* 180 Conn. 565, 565 n.1, 430 A.2d 1290 (1980).

later extension of time to "before Christmas." The plaintiffs did, however, inform the defendant that they had sold their existing home with an agreed closing date of December 20, 1978, by which time they were to surrender possession without delay.

The sale of the plaintiffs' former home took place as scheduled and, on December 20, 1978, they rented a bungalow for their interim occupancy at a rental of $50 per week. Three days later, a physical altercation occurred between Fullerton and the defendant as a result of their differences. After this flare-up, Fullerton was denied access to the premises to complete any of the work required of the buyers. He did, however, visit the premises several times to conduct settlement negotiations. A closing date of January 20, 1979, was requested by the plaintiffs. Fullerton informed the defendant that, otherwise, a suit for specific performance would be instituted. The defendant, in reply, imposed three conditions for closing on that day: (1) that the plaintiffs relinquish all claims occasioned by the delay in the completion of the house; (2) that the plaintiffs execute a waiver running to the town of Newtown with respect to a fifteen degree grade on portions of the driveway of the residence; and (3) that Fullerton execute a release in favor of the defendant with respect to the assault which had occurred on December 23, 1978. The plaintiffs refused these demands and brought this action for specific performance and damages. Ancillary to their suit, a lis pendens was filed on the land records on February 28, 1979. The defendant obtained a conditional certificate of occupancy on March 2, 1979, but the parties were unable to reach an agreement on the closing and a stalemate followed. The defendant filed a counterclaim for damages allegedly caused by the plaintiffs' failure to close within a reasonable time after March 2, 1979.

On December 20, 1979, the Citizens National Bank of Fairfield, a second mortgagee of the defendant, started foreclosure proceedings against the property. The plaintiffs were named defendants in that action because of their lis pendens against the property and a mechanic's lien filed by Fullerton for materials and labor furnished in the amount of $4724.05. This foreclosure action went to a judgment of strict foreclosure. The plaintiffs exercised their right of redemption on June 10, 1980. Title in fee simple was obtained by payment of $103,524.86 to the prior encumbrancers, including the first mortgagee. To obtain this financing, the plaintiffs borrowed $75,000 from Fullerton's parents at 10 percent interest.

In their purchase contract, the plaintiffs had agreed to apply for a mortgage loan at the Newtown Savings Bank, the defendant's first mortgagee. This bank gave the plaintiffs a commitment for a mortgage loan of $75,000 for thirty years at 9¾ percent interest. The commitment was extended to January 3, 1979, but cancelled on that date. Upon the plaintiffs' redemption of the property seventeen months later, the bank had increased its rate to 14 percent, four percentage points higher than the interest rate charged by the parents. After taking possession of the premises, the plaintiffs incurred further expenditures to correct defects and to complete the work of the defendant on the house. Thereafter, on March 12, 1981, the plaintiffs amended their complaint in this action by adding a second count alleging damages consequential to their obtaining title to the premises by redemption in the foreclosure proceeding.

The trial court concluded that time was not of the essence under the contract between the parties. It found that the agreement neither expressed nor implied such an intention in its terms. When the closing did not take place on October 30, 1978, as specified in the

agreement, the court held that the plaintiffs were under a duty to extend for a reasonable period the defendant's time for completion of the house. The defendant knew that the plaintiffs had sold their former home with possession and occupancy to be delivered by them on December 20, 1978. The court found, therefore, that a closing on that date would have given the defendant a reasonable further time of almost two months for performance of the agreement. Consequently, it measured the plaintiffs' damages from that date and awarded them judgment in the amount of $22,740.30. Damages were computed as follows:

| | |
|---|---:|
| Cost of property redemption | $103,524.86 |
| Counsel fees for property redemption | 2,174.36 |
| Correction and completion of defendant's work | 9,069.48 |
| Deposit paid to defendant | 11,000.00 |
| Total cost of property | $125,768.70 |
| Contract price | 108,000.00 |
| Increased cost to plaintiffs | $17,768.70 |
| Additional mortgage interest of ¼ percent for thirty years discounted | 4,971.60 |
| Total damages | $22,740.30 |

Judgment was also rendered for the plaintiffs on the defendant's counterclaim.

The defendant's first claim is that the court erred in finding that the defendant breached the contract. This court disagrees with that claim. It is the contention of the defendant that since the closing date had passed, the plaintiffs waived their right to performance on October 30, 1978, by working on the premises during November and December, 1978. Asserting that "[w]hen time is not the essence of a contract and the conduct of the parties creates a vacuum as to a date for performance, there is no date for performance until one party makes a formal demand to close," the defend-

ant maintains that "it was not until January 3, 1979, that the Plaintiffs demanded that the Defendant close on or before January 20, 1979." Therefore, it is his position that if any breach occurred, it was on January 20, 1979, and damages should be measured from that time.

" 'The law is that a day fixed in a contract for closing title, without more, is merely formal; but if it is stipulated that time is of the essence, or the circumstances are persuasive that that is the case, prompt performance is essential, and it is also the law that where the time fixed is regarded as a formality only, and the period has gone by, or where time is of the essence and there is a waiver, that time may nevertheless be made of the essence by formal demand that the title be closed by a given day; but the time given must be reasonable.' *Orange Society* v. *Konski,* 94 N.J. Eq. 632, 635 [121 A. 448, aff'd, 95 N.J. Eq. 254, 122 A. 753 (1923)]. Of course, 'The fact that a contract sets a date for the closing of a transaction does not of itself make time of the essence of the contract.' *Droppers* v. *Rand,* 208 Wis. 681, 686 [242 N.W. 483 (1932)]." *Calandro* v. *Koons,* 17 Conn. Sup. 374, 380 (1951).

The trial court specifically found that "[t]he defendant breached the contract [on December 20, 1978] and in the absence of circumstances of excuse or waiver, plaintiffs are entitled to recover any damages they have suffered by reason of said breach." We will not disturb the court's findings of a breach of contract by the defendant, and of an absence of excuse or waiver of such breach by the plaintiffs, unless they are clearly erroneous. Practice Book § 3060D. That is not the case here. The date of the defendant's breach having been found to be December 20, 1978, all damages were appropriately calculated as of, and from, that day.

The remainder of the defendant's claims of error relate to the court's computation of damages. He com-

plains of the inclusion in the award of (1) the cost of regrading the land, (2) expenses incurred in the completion and repairs after the plaintiffs' occupancy of the home began, (3) attorney's fees incurred by the plaintiffs in defending the foreclosure action brought by Citizens National Bank of Fairfield, and (4) the mortgage interest rate differential.

"The general rule in breach of contract cases is that the award of damages is designed to place the injured party, so far as can be done by money, in the same position as that which he would have been in had the contract been performed." *Beckman* v. *Jalich Homes, Inc.*, 190 Conn. 299, 309, 460 A.2d 488 (1983); *Sperry* v. *Moler,* 3 Conn. App. 692, 695, 491 A.2d 1115 (1985); *Barnicoat* v. *Edwards,* 1 Conn. App. 652, 654, 474 A.2d 808 (1984). Each of the elements of damages disputed by the defendant falls within the parameters of this general rule, and the court's award cannot be said to have been clearly erroneous. *Beckman* v. *Jalich Homes, Inc.,* supra, 310.

The relevant standard formula for computing the appropriate measure of damages in cases such as this is "the reasonable cost of construction and completion in accordance with the contract." *Levesque* v. *D & M Builders, Inc.,* 170 Conn. 177, 181, 365 A.2d 1216 (1976). Thus, the cost of regrading the land and the expenses incurred by the plaintiffs to complete the home and repair the defendant's work after they took possession were appropriately included in the amount of damages awarded to them by the court.

The attorney's fees incurred by the plaintiffs in defense of the foreclosure action instituted by Citizens National Bank of Fairfield were the direct result of their lis pendens against the property which made them parties to the proceedings. Since this prior suit for specific performance was then pending, the lis pendens

and the subsequent defense by the plaintiffs in the foreclosure action were necessary for the preservation of their contractual rights and interest in the foreclosed property. Thus, the plaintiffs' attorney's fees incurred in defense of the foreclosure proceedings were properly included in the damage award.

Finally, with regard to the mortgage interest differential, such damage naturally flowed from the defendant's breach of contract and was correctly granted. The parties contemplated that the purchase of the home was to be financed by a mortgage. Indeed, the contract signed by the parties specifically required the plaintiffs to apply to the defendant's first mortgagee, the Newtown Savings Bank, for that mortgage, which they did. The delay in the closing of the purchase of the premises by the plaintiffs, during which the dramatic rise in interest rates occurred, was caused by the defendant and the additional expense is, under these circumstances, a proper item of consequential damage for consideration by the court. It was the defendant who breached the contract. The resulting additional interest costs are attributable to this breach. The defendant is allowed, however, to benefit from the plaintiffs' private mortgage arrangements for a reduced increase in rate. Under very similar circumstances the trial court awarded the mortgage interest differential as an element of damages in *Cohen* v. *Meola,* 37 Conn. Sup. 27, 36, 323 A.2d 553 (1980). Our Supreme Court upheld that ruling without articulation, stating that "[b]ecause of the comprehensiveness of the memorandum of decision filed by the trial court, we adopt the trial court's decision as a statement of the facts and the applicable law." *Cohen* v. *Meola,* 184 Conn. 218, 221, 439 A.2d 966 (1981).

There is no error.

In this opinion the other judges concurred.