MARETZ-FRANFORD, INC. *v.* ARNOLD KRAMER ET AL.
(3674)

DUPONT, C. J., BORDEN and BIELUCH, Js.

Argued January 8—decision released April 22, 1986

*William F. Gallagher,* with whom, on the brief, was *Robert P. Borquez,* for the appellants (defendants).

*Richard L. Goldblatt,* for the appellee (plaintiff).

BIELUCH, J. The plaintiff sued the defendants, Arnold Kramer and Cheryl Kramer, seeking to recover a broker's commission for the sale of the defendants' commercial real estate under an exclusive listing agreement. Judgment was rendered for the plaintiff in the

amount of $50,000. The defendants have appealed from that judgment claiming that the court erred: (1) in holding that the real estate listing agreement sued upon by the plaintiff complied with General Statutes § 20-325a (b); (2) in holding that the real estate listing agreement was severable, and as severable, complied with § 20-325a (b); (3) in refusing to hold that the sale of the restaurant business together with the real estate was a condition precedent in the listing agreement, and that, since the plaintiff failed to sell the business with the realty, the agreement was unenforceable; and (4) in rendering judgment for the plaintiff when the same was clearly contrary to the evidence presented at trial.[1]

The trial court found the following relevant facts. The named defendant owned all of the capital stock of Adakram, Inc., which owned a restaurant business, known as the Sanford Barn, located at 135-136 Sanford Street, Hamden, on real estate owned by the two defendants jointly. In 1977, the defendants executed an exclusive listing agreement with the plaintiff through its agent, Steven Press, a close personal friend of the Kramers, for the sale, lease or exchange of the realty and business. The agreement was renewed several times, the last renewal occurring on September 22, 1980. During the term of the various listing agreements, the property was widely advertised for sale by the plaintiff, and Press produced over the years many prospective purchasers to whom he showed the premises and business.

The listing agreement of September 22, 1980, upon which this action is based, purported to be between Arnold Kramer, Cheryl Kramer and Adakram, Inc., as owners, and the plaintiff, as agent. It was executed on behalf of the real estate owners only by Arnold Kramer

---

[1] Two additional issues raised in the defendants' preliminary statement of issues were not briefed and are therefore considered abandoned. *Fullerton* v. *McGowan,* 6 Conn. App. 624, 625 n.1, 507 A.2d 473 (1986).

and Cheryl Kramer individually. The agreement was not signed by or on behalf of Adakram, Inc., and the corporation is not a defendant in this action. Titled "Standard Multiple Listing Agreement—Exclusive Right To Sell," the agreement appointed the plaintiff as exclusive agent and granted it the "sole and exclusive right to SELL/LEASE/EXCHANGE the property and business known as Sanford Barn—business, furniture, fixtures, equipment & real estate at 135-136 Sanford St., Hamden, Ct." for a period of six months terminating on March 22, 1981. The owners authorized the agent "to quote" a sale price of $950,000 plus food and liquor inventory. Paragraph seven of the agreement stipulated that "whenever during the term of this agreement said property shall have been SOLD/LEASED/EXCHANGED or a customer procured, ready, able and willing to BUY/LEASE/EXCHANGE the property for the price [of $950,000], or for any other price or upon such terms as may be agreed to by the OWNER[S], the OWNER[S] will pay the AGENT a commission of ten percent (10%)." Also relevant here is paragraph three, which provided that the owners agreed "to refer to AGENT all inquiries about, or offers for, the property."

In late January or early February, 1981, while the plaintiff's exclusive listing agreement was in effect, the defendants were introduced to Demetrius Traggis as a prospective purchaser by another broker named Diane Massato. This introduction took place at the restaurant on the subject property. As a result of the meeting, Traggis agreed, in February, 1981, to purchase the real property for $500,000 and the business for $100,000. This was done surreptitiously without the knowledge of the plaintiff, notwithstanding the defendant's undertaking in their listing agreement to refer to the plaintiff all inquiries about, or offers for, the property. Subsequently, on May 15, 1981, less than eight

weeks after the expiration of the plaintiff's exclusive listing agreement, the purchase of the real estate by Traggis was concluded for the price of $500,000. Contemporaneously with the transfer closing, the defendants and Traggis executed a buy-and-sell agreement which purported to document, for the first time, the terms and conditions of the real estate sale and to put the sale beyond the reach of the plaintiff's exclusive listing agreement, although the defendants and their attorney were in constant communication with Traggis from February through the date of the closing. There were continued and unbroken negotiations between Traggis and the defendants over these three months, but neither the defendants nor their attorney referred the buyer to, or notified, the plaintiff. At the time of the real estate agreement, the corporation also contracted to sell the restaurant business of Adakram, Inc., to Traggis for $100,000. These two sale agreements confirmed in writing the oral agreements reached by the defendants and Traggis earlier in February. The sale of the business was never completed under this agreement, however, because Adakram, Inc., filed for bankruptcy under Chapter XI of the Federal Bankruptcy Act. It then ceased doing business and its assets were later sold at auction by the trustee in bankruptcy.

As a result of the defendants' refusal to pay a commission on the sale of the real estate, the plaintiff brought the present action. After trial, the court reached the following conclusions: That the listing agreement met the statutory requirements of General Statutes § 20-235a (b) and granted the plaintiff the exclusive right to sell the real estate for six months from September 22, 1980, for a commission of 10 percent of the gross selling price; that the defendants sold the real estate on or before May 28, 1981, for a gross sale price of $500,000; that the sale was made to a buyer after the purchaser had entered into negotiation for

the purchase during the term of the exclusive listing agreement which made the plaintiff "the only medium through which a purchaser can be procured during its life"; that the purchaser was ready, willing and able to purchase the property on terms and conditions which were acceptable, and were in fact ultimately accepted, by the defendants, during the life of the exclusive listing agreement; that the plaintiff was clearly entitled to its commission whether the purchase agreement at the time was specifically enforceable or not; that the defendants breached their listing agreement with the plaintiff; and that the listing agreement was severable regarding the real estate, since the clear intention of the defendants was to sell their real estate without regard to whether the corporation sold its restaurant business.

The defendants' first two claims of error relate to the trial court's conclusion that the listing agreement signed by the parties satisfied the requirements of General Statutes § 20-325a (b). They first argue that since Adakram was not a signatory to the agreement and since its corporate address was not contained therein, the agreement violated § 20-325a (b). This argument presupposes, however, that Adakram was, in fact, a necessary party to the listing agreement for the sale of the real estate. The trial court correctly found that Adakram was not an owner of the real estate and that the defendants "were the only ones required by law to have signed the Listing Agreement as a condition of suit, and that Adakram, Inc., did not sign an agreement is irrelevant to these defendants."

The court reasoned that the claim involved a commission for the sale of real estate and the listing agreement was complete as to the parties involved in that sale. Any other claimed deficiency as to matters outside the sale of the real estate and this suit related to surplusage contained in the listing agreement, the pres-

ence of which did not violate the letter or the intent of § 20-325a (b). The statute sets forth minimum requirements, but does not prohibit the inclusion of any other matters or writing in a legal agreement. Adakram, Inc., was not an owner of the real estate sold. Contracts for the payment of a commission on the sale of personal property are not governed by General Statutes, chapter 392, "Real Estate Brokers and Salesmen," §§ 20-311 through 20-329bb.

The defendants also claim that the court erred in finding that the listing agreement for the sale of the real estate was severable from the agreement regarding the sale of the business. This claim is based on the defendants' argument that the parties did not intend to create a severable agreement. To support their position they refer to the subject of the listing agreement, "the property and business known as Sanford Barn," and the authorization to the agent to quote a combined "price of $950,000."

The trial court found otherwise, citing law and fact. On the issue of intent, the court stated: "The determination of the parties' intention includes a question of the intention of the parties and fair inferences of fact. *John F. Epina Realty, Inc.* v. *Space Realty, Inc.*, 194 Conn. 71, 78 [480 A.2d 499 (1984)]." *Epina Realty* was an action to recover commissions in connection with the sale or lease of certain real estate and with the sale of a restaurant business, the realty and personalty having been under separate ownership. The case is relevant to the present issue and we quote further from it: "The intention of the parties to a contract is to be determined by a fair and reasonable construction of the language used interpreted in light of the situation of the parties, the circumstances connected with the transaction, the motives of the parties and the purposes which they sought to accomplish. . . . In the context of this case, the determination of what the parties

intended in their listing agreements 'is a question of the intention of the parties, and an inference of fact. As an inference of fact, it is not reversible unless the trial court could not reasonably have arrived at the conclusion it reached.' " (Citations omitted.) Id., 77–78.

The trial court here concluded that "[t]he clear intention of the defendants in the present case, was to sell their real estate without regard to whether or not the corporation sold the business." This conclusion was based on the following facts found by the court: As the owners of the real estate, the defendants held a separate interest from that of the corporation which owned the personal property. The defendants had obtained an appraisal of the value of their real estate separate and apart from that of the restaurant. The real estate was financed separately from the business. Only one of the defendants owned stock in the restaurant corporation. Under paragraph seven of the listing agreement, the defendants specifically reserved for themselves, the conditional right to sell their property "for any other price or upon such terms as may be agreed to by [them, provided they] will pay the AGENT a commission of ten percent (10%)." There was no provision in the listing agreement excluding the obligation to pay a commission in the event that the defendants agreed to sell the real estate and the corporation did not agree to sell the restaurant. As the trial court observed, "[t]o the contrary, their agreement is unequivocal to pay a commission upon any sale on terms agreeable to them and upon that occurrence their obligation to pay a commission is clear." The defendants reserved a right to act independently of the restaurant corporation, and did so act, and thereby "should not be allowed to escape their obligation to pay the commission."

At trial and on appeal, the defendants cite *Cone* v. *Pederson,* 131 Conn. 374, 40 A.2d 274 (1944), in support of their claim that the listing agreement for the

sale of the real estate and the restaurant was inseparable. In *Cone,* the defendant, on April 7, 1943, gave the plaintiff an exclusive listing and the sole and exclusive right to sell his farm for $48,000, including stock and tools, "for the period of 60 days from this date, and thereafter until notified by me in writing."[2] Id., 376. The defendant's farm consisted of 182 acres and his homestead. On July 19, 1943, the defendant privately sold forty acres of these premises, with the buildings thereon. This sale was consummated a week later. A letter purporting to cancel the exclusive listing was mailed to the plaintiff on July 22, 1943, but was received two days after the completion of the transfer. No mention of the sale was ever made by the defendant to the plaintiff. Subsequently, suit was brought for a commission, the claim was disallowed, and the Supreme Court affirmed, stating briefly: "The agreement of the parties not only contains no provision for compensation to the plaintiff for the sale of other than the farm but by its context, including the statement, 'Price $48,000.00,' and repeated reference to 'said real estate,' makes clear that it is an entire and not a severable contract." Id., 379–80.

The trial court here distinguished *Cone* for the reasons that the listing agreement in that case contained no provision for a sale of less than the defendant's entire farm, and the defendant was the individual owner of all of the real estate and the business, consisting only of stock and tools, offered for sale. On the other hand, the defendants here were the owners of the real property only, which they sold independently of the personalty. The restaurant business was owned

---

[2] Such an open ended exclusive listing provision is now outlawed. General Statutes § 20-320 (6) provides for the suspension or revocation of the license of a real estate broker or real estate salesman for "entering into an exclusive listing contract which contains a fixed termination date if such contract also provides for an automatic continuation of the period of such listing beyond such date."

separately by Adakram, Inc., and was operated wholly and independently as a separate entity. Adakram's subsequent bankruptcy had no effect on the defendants' ownership of the real estate or its sale. When Adakram, Inc., first filed for bankruptcy protection under Chapter XI of the Federal Bankruptcy Act in February of 1981, the defendants did not withdraw their real property from the market, nor did they attempt to cancel their listing agreement. To the contrary, they allowed the plaintiff, with their knowledge, thereafter to continue in its active efforts to sell the real estate.

The monetary consideration in the listing agreement under review is the commission payable to the plaintiff, and it is apportionable as to the sale of the real estate by the defendants because that sale is severable from the corporate sale of the restaurant. The claim of nonseverability of the real estate listing agreement constitutes an attempt to retry the facts, which we will not do. Practice Book § 3060D.

The defendants' third claim is that the court erred in failing to find that the sale of the business together with the real estate was a condition precedent to the plaintiff's right to a commission. In support of this claim of error, the defendants cite here, as they did in the trial court, the case of *Lach* v. *Cahill*, 138 Conn. 418, 85 A.2d 481 (1951). That case does not support the defendant's position. *Lach* was a suit for the return of a deposit on a house given under a purchase agreement " 'contingent upon buyer being able to obtain mortgage in the sum of $12,000.00 . . . .' " Id. The buyer was unable to secure such financing. The principal issue there was whether the ability of the buyer to secure such a mortgage was a condition precedent to the purchase of the home. In affirming the refund, the Supreme Court held: "A condition precedent is a fact or event which the parties intend must exist or take place before there is a right to performance. . . .

Whether a provision in a contract is a condition the non-fulfillment of which excuses performance depends upon the intent of the parties, to be ascertained from a fair and reasonable construction of the language used in the light of all the surrounding circumstances when they executed the contract." Id., 421. The trial court in this case found that the defendants failed to support their position with meaningful facts. It also found that the terms of the listing agreement controlled, and there was no provision in that listing for payment of a commission only in the event of a sale of both the corporate business and the real estate.

In their brief, the defendants claim that the listing agreement demonstrates "an intention to make the sale of both the real estate and the business a condition precedent to the owners' duty to pay a commission." To support this alleged expression of intent they note (1) that "the language in the contract linked the words 'property' and 'business' together," (2) that the quoted sale price of both properties was combined into one figure, and (3) that only one commission was to be paid. We respond to these contentions by holding that the listing agreement clearly shows, as the trial court concluded, that there was no intention that the sale of both the real estate and the business jointly was a "condition precedent to the plaintiff's entitlement to a commission."

Finally, the defendants argue that the trial court's decision was contrary to the evidence presented at trial. After carefully reviewing the record, we disagree with this claim of error.

There is no error.

In this opinion the other judges concurrred.