[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT
This is an action to recover a broker's commission. The defendant has filed a motion for summary judgment claiming that the plaintiff cannot recover because there was no written listing agreement in effect for the sale of the property which is the basis for the plaintiff's claim. As part of the motion the defendant filed a copy of the original listing agreement, an addendum to that listing agreement, copies of sales contracts between the defendant and a prospective buyer, Running Brook Properties, a letter and an affidavit. In opposition to the motion the plaintiff has filed some of the same documents and an affidavit.
A summary judgment may be granted under section 384 of the Connecticut Practice Book if the pleadings, affidavits and other proof submitted with the motion show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Connelly v. Housing Authority, 213 Conn. 254, 264; Bartha v. Waterbury House Wrecking Co., 190 Conn. 8, 11; Yanow v. Teal Industries, Inc., 178 Conn. 262, 268. To satisfy this burden, the moving party must make a showing that it is quite clear what the truth is, and that it excludes any real doubt as to the existence of any material fact. D.H.R. Construction Co. v. Donnelly, 180 Conn. 430, 434; Fogarty v. Rashaw, 193 Conn. 442,445. In determining whether there is a material issue of fact, the evidence is considered in the light most favorable to the nonmoving party. Strada v. Connecticut Newspapers, Inc., 193 Conn. 313, 317; Connell v. Colwell, 214 Conn. 242,246, 247. Once the moving party has presented evidence in support of the motion for summary judgment, the opposing party must present evidence that demonstrates the existence of some disputed factual issue. State v. Goggin, 208 Conn. 606,616; Bartha v. Waterbury House Wrecking Co., supra, 11, CT Page 1916 12. The test as to whether a summary judgment should be granted, namely that the moving party must be entitled to judgment as a matter of law, is resolved by applying to the established facts the same criteria as is used in determining whether a party would be entitled to a directed verdict on the same facts. Connelly v. Housing Authority, supra, 364; Connell v. Colwell, supra, 247; State v. Goggin, supra, 616; Batick v. Seymour, 186 Conn. 632, 647.
A party opposing summary judgment must present evidence that demonstrates the existence of some disputed material factual issue. Daily v. New Britain Machine Co., 200 Conn. 562,568; State v. Goggin, supra, 616; Bartha v. Waterbury House Wrecking Co., supra, 11, 12. General claims and conclusory statements that there is a material issue of fact are insufficient to defeat the motion. Daily v. New Britain Machine Co., supra, 569; Burns v. Hartford Hospital,192 Conn. 451, 455. To oppose a summary judgment the nonmoving party must bring forward evidentiary facts or substantial evidence outside the pleadings from which the material facts alleged in the pleadings can reasonably be inferred. Sheridan v. Board of Education, 20 Conn. App. 231, 239; State v. Goggin, supra, 616, 617. A claim that factual issues exist is insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court under section 380 of the Practice Book. Connell v. Colwell, supra, 254; Bartha v. Waterbury House Wrecking Co., supra 12.
The parties have filed substantially the same documentary evidence on this motion. They originally entered into a written listing agreement dated May 29, 1986 which stated that the listing was in effect for six months until November 29, 1986, and provided that the plaintiff/broker would receive a 10% commission of the agreed sales price "if during the term of this contract (a) the listed property is sold or (b) we, you, or anyone else finds a buyer ready, willing and able to buy the listed property, either for the listed price or for any other price acceptable to me." During the term of the listing, on August 1, 1986, the defendant property owner signed a sales contract to sell the property to Running Brook Properties (hereafter RBP), contingent upon approval of a 200 unit condominium project for the subject property. In August 1987, when problems developed with the project, the defendant renegotiated the transaction and signed a new sales contract contingent upon zoning approval for a 74 unit condominium complex. On September 24, 1987, the defendant signed an agreement with the plaintiff that the plaintiff would receive a commission of 5% of the sales price for the sale of the property in the contract dated August 13, CT Page 1917 1987 between the defendant as seller and RBP as buyer. This instrument was a modification of any prior agreement to pay a commission based upon the original listing and the fact that the broker had procured a customer which had entered into a contingent sales contract. It was not a renewal of the listing agreement. The defendant never signed any written listing agreement with the plaintiff after May 29, 1986.
The plaintiff's affidavit alleges work done by the plaintiff as broker on the property between August 1, 1986 and August 13, 1987. There is no claim that there was another listing agreement or that the broker did work subsequent to that date.
The documentary evidence discloses that the necessary zoning approval which was a contingency in the August 13, 1987 contract was not obtained from the Milford Planning and Zoning Board. A sale based on the contract never occurred. In late Spring, 1989 the defendant was approached again by RBP, and on June 1, 1989 they entered into a sales contract to sell the subject property for $1,000,000. The plaintiff's affidavit does not allege any conduct which resulted in the sale, although Paragraph 11 of the plaintiff's affidavit claims that the broker was the sole procuring cause of the sale. There is a discrepancy between the affidavits as to the closing date, with the plaintiff claiming it occurred on September 29, 1989, while the defendant states that a closing was held November 3, 1989.
While some of the statements in the affidavits are not fully consistent, a review of all the documentary evidence indicates that there is no genuine issue as to any material fact. It is clear that the ultimate sale to RBP resulted from new negotiations after the original contracts fell through when the contengencies were not satisfied. It is also clear that the plaintiff did not have a written listing agreement after November 29, 1986 and that the agreement of September 24, 1987 was an agreement to pay a commission based upon the August 13, 1987 contract. While the court does not have to accept the conclusion of the plaintiff that it was the sole procuring cause of the sale, Farrell v. Farrell, 182 Conn. 34,39; Daily v. New Britain Machine Co., 200 Conn. 562, 569, even if the plaintiff was the sole procuring cause of the sale, it is not entitled to a commission unless it has a written listing agreement.
The right of a real estate broker to recover a commission depends upon whether there is a written listing agreement in effect containing the essential information in section 20-325a of the Connecticut General Statutes. Revere CT Page 1918 Real Estate Inc. v. Cerato, 186 Conn. 74, 77; Thornton Real Estate Inc. v. Lobdell, 184 Conn. 228, 229, 230; Hossan v. Hudiakoff, 178 Conn. 381, 383; Rostenberg-Doern Co. v. Weiner, 17 Conn. App. 294, 305. The broker's right to a commission is controlled by the terms of the listing agreement. John F. Epina Realty Inc. v. Space Realty Inc.,194 Conn. 71, 78. There was no written listing agreement giving the plaintiff/broker the right to a commission for the sale that was ultimately agreed to and carried out. An action to recover a commission arising out of a real estate transaction cannot be maintained unless there is a written contract or authorization expressing the underlying agreement. Francis P. Zappone Co. v. Mark, 197 Conn. 264,266. It was held in Currie v. Morano, 13 Conn. App. 527, 530
and Howland v. Schweir, 7 Conn. App. 709, 715, that there is no liability for a property owner to pay a broker's commission for services rendered by the broker after the written listing agreement or the extension of it expired. The original deals terminated when the contingencies were not satisfied. See Menard v. Coronet Motel, Inc., 152 Conn. 710; Setaro v. Botelho, 4 Conn. Cir. 721. It is clear that brokers are not entitled to commissions merely because the buyer and seller get together and arrange an entirely new transaction between them long after the listing agreement has expired. In fact, open ended exclusive listing agreements are illegal. Section 20-320 (6) C.G.S.; Maretz Franford Inc. v. Kramer, 7 Conn. App. 120, 128 n. 2. The fact that the broker performed valuable services when a valid listing agreement was in effect, which led to a contract between buyer and seller which later fell through does not allow the broker to circumvent the requirements of section 20-325 (a) when the buyer and seller enter into a new agreement long after the listing has expired. There is no genuine issue as to any material fact. The defendant is entitled to judgment as a matter of law.
The motion for summary judgment is granted.
ROBERT A. FULLER, JUDGE