[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for breach of contract brought by the plaintiff, Dove Brothers, Inc., against the defendants, Wayne and Dale Horn. The plaintiff has been involved in the business of CT Page 4360 erecting pre-engineered steel buildings in the Litchfield County area. The matter was originally brought to this court on a motion to dissolve a mechanic's lien, Horn v. Dove Brothers, Inc., DN CV 90-0052210S, whereupon the court ordered the pleadings to be expeditiously closed, and a hearing held on the merits. This instant contract action was returnable March 27, 1990, was assigned for trial on April 17, 1990, and said trial was completed on April 25, 1990. At said trial this court found the following.
On April 18, 1989, the plaintiff and the defendants entered into a contract ("the Contract") for the construction of a pre-engineered steel building ("the building") for an agreed upon price of $51,226.00. Plaintiff's Exhibit 1 (the Contract). A building permit was acquired on April 26, 1988, and the plaintiff claims that said permit would expire on April 25, 1989 if work on the building had not yet begun. Plaintiff's Exhibit 5 (Building permit). Therefore, the plaintiff claimed, the defendants requested that it proceed with the foundation even though it had not yet received the "anchor bolt" drawings from the manufacturer. The drawings were apparently required so that appropriate footings for steel beams would be properly located and distanced.
Subsequent to a delay allegedly at the defendants' request due to lack of funds, the plaintiff ordered the steel span building from the manufacturer, completed part of the metal structure, and was, thereafter, on October 2, 1989, terminated from the job. The plaintiff claims that its loss of profits after having been precluded by the defendants from completing the work and the value of work and materials provided prior to its termination, constitute damages pursuant to a claim for breach of contract. The plaintiff also seeks compensatory and punitive damages for the defendants' conversion of its tools for a period of time during which the defendants refused to return said tools and refused to permit the plaintiff onto the building's premises to recover the same.
The defendants claim that they first terminated the contract on or about May 30, 1989, due to dissatisfaction with the progress of the contract work, but reaffirmed that contract with the understanding that the building would be "substantially completed" by October 1, 1989. Plaintiff's Exhibit 10 (June 4, 1989, Letter from the defendants to the plaintiff). The defendants finally terminated the contract on October 2, 1989, and completed the contract work with another builder at an additional cost of $14,520.50. Defendant's Exhibit 11 (Copies of expenses incurred in completing the building). Subsequently, on December 27, 1989, the plaintiff filed a mechanic's lien in the amount of $15,000.00 for the value of the unpaid materials and services provided pursuant to the contract, as well as for the value of its tools. Consequently, the defendants were compelled to seek to discharge the same. CT Page 4361
During the course of the trial, both parties introduced testimony to support their respective claims. The defendants offered the testimony of Mr. Peter Bujnowski, who attempted to illustrate construction errors committed by the plaintiff. Indeed, Mr. Bujnowski testified that the plaintiff: improperly installed the northwestern corner of the building in a position where the building did not properly fit on the foundation; allowed the metal sheeting for the exterior of the building to lie on the ground for almost one month, thereby resulting in the formation of rust on said sheeting; improperly installed piers, resulting in plates overlapping said piers, necessitating additional work; and caused burn holes in the aforementioned plates. Mr. Bujnowski further testified that, because of the aforesaid errors, the value of the building, as constructed, was between $5,000.00 and $10,000.00 less than said building would have been had it been properly constructed. Testimony of Peter Bujnowski; Defendants' Exhibit 13 (Report of Peter Bujnowski).
Mr. Bujnowski testified that an additional expenditure of $523.80 was required to jack up piers for a lean-to, resulting in the defendant paying a total of $50,028.80 to complete the building. Said cost is $1,198.00 less than the contract price of $51,226.00. However, in light of Mr. Bujnowski's testimony that the building is worth between $5,000.00 and $10,000.00 less than it would have been had it been properly constructed, the defendants contend that the building is, at a minimum, worth $46,226.00, resulting in a loss to the defendants of $3,802.80. Defendants' Exhibit 13.
More compelling to this court was the testimony of Mr. Edward Vanderhoef, a professional engineer who testified as the plaintiff's expert. Mr. Vanderhoef testified that the overall construction quality of the building is probably slightly better than average and, indeed, "was in pretty good shape." Testimony of Edward Vanderhoef; Plaintiff's Exhibit 29 (Report of Edward Vanderhoef). Mr. Vanderhoef testified that the building had a construction value of approximately $114,500.00 and, although he could not break down that value, said value was representative of the final project. Mr. Vanderhoef testified that he did not examine the building during the construction. Testimony of Edward Vanderhoef.
Mr. Vanderhoef also stated that most of the field conditions described by Mr. Bujnowski were either aesthetic in nature and, therefore, easily remedied, or not a field condition at all. Plaintiff's Exhibit 29. Mr. Vanderhoef's report coincides with the testimony of Mr. Bujnowski in that both agree that the wall does not line up with the steel wall framing. However, such condition appears to have been remedied by moving the framing inward approximately 3.25 inches via the use of existing bolts holes in CT Page 4362 affected framing. Plaintiff's Exhibit 29.
There was testimony to the effect that lean-to piers were intentionally constructed so that columns did not rest on the center of the piers. The plaintiff elicited testimony from Mr. Vanderhoef that such positioning would make it easier to enclose the lean-to, if the defendants so desired. Contrary to the defendants' expert, Mr. Vanderhoef's report indicates that this is a common practice. Plaintiff's Exhibit 29.
Mr. Vanderhoef stated, inter alia, that, contrary to the defendants' contention, there were only two small areas of fine surface rust. Plaintiff's Exhibit 29. Mr. Vanderhoef stated in his report that "[t]he dust was easily removed with a vigorous rubbing of the surface. The paint and the underlying galvanized surface does not appear to have been penetrated by the rust and is probably not the cause of the rust . . . Scrubbing the walls with a stiff brush would probably permanently remove the rust." Plaintiff's Exhibit 29.
The testimony proffered by experts for both the plaintiff and the defendants lead this court to conclude that the construction of the building, while not perfect, was, in the words of Mr. Vanderhoef, slightly better than average.
Pursuant to evidence provided at trial, it appears to this court that the plaintiff and the defendants entered into the Contract whereby the plaintiff would construct the building for a price of $51,226.00 "A.S.A.P." Contract, Article 2, 2.1. Time "[was] of the essence of the Contract." Contract, Article 14, 14.1. The Contract also provided, inter alia, that the defendants could withhold payments "on account of . . . (6) reasonable evidence that the work will not be completed within the Contract Time." Contract, Article 15, 15.1(6). Any changes in the work would be pursuant to a written change order signed by the owner and by the contractor, Contract, Article 13. Finally, the Contract provided that if the contractor failed to carry out the work in accordance with the contract documents, the owner could terminate the contract and charge the contractor for any difference between the cost to complete the work and the original contract price. Contract, Article 20, 20.2.
As was noted, supra, the plaintiff began working on the building after the execution of the contract. This court finds that the defendant, after encountering difficulty with regard to the progress of the construction, terminated the contract on May 30, 1989. Testimony of Wayne Dove; Plaintiff's Exhibit 9 (May 30, 1989, Letter from the defendants to the plaintiff). Thereafter, the parties reaffirmed the contract, providing for work to be "substantially completed" by October 1, 1989. Testimony of Wayne CT Page 4363 Dove; Plaintiff's Exhibit 10 (June 4, 1989, Letter from the defendants to the plaintiff). Such a reaffirmation constitutes a material provision of the contract, necessitating that the plaintiff substantially complete the contract on October 1, 1989. See, e.g., Fullerton v. McGowan, 6 Conn. App. 624, 629,507 A.2d 473 (1986). The prefabricated metal building arrived at the site on September 11, 1989, and testimony leads this court to find that the plaintiff's employees left the job site from September 13, 1989 until September 20, 1989, at which time defendant Dale Horn pleaded with the same to return to work. Testimony of Dale Horn. This sequence of events was repeated when the plaintiff's employees left the site on September 20, 1989, and were begged by Dale Horn to return on September 28, 1989. Testimony of Dale Horn.
The testimony of plaintiff Debbie Dove indicates that, on September 28, 1989, she ordered, via telephone, insulation for the building from CCI Company. Delivery of same would not be made until October 4, 1989, three days after the Contract's final date for substantial completion of the building. Testimony of Debbie Dove. This court finds that the plaintiff's failure to provide for this insulation until October 4, 1989, and the consequent impact of the same upon the completion of the building, specifically, the fact that the frame work for the building was not yet complete, Testimony of Dale Horn, results in the plaintiff having failed to substantially complete the building by October 1, 1989. This failure constitutes a breach of the Contract and, therefore, the defendants were justified in terminating the Contract and proceeding to complete the building in accordance with Contract, Article 8, 8.3; Article 20, 20.2. However, because this court finds that the plaintiff was compensated for all of the work it performed, and because any amount expended by the defendants as a consequence of the plaintiff's breach was minimal, Defendants' Trial Brief, p. 9; Defendants' Supplemental Brief, p. 10, no damages will be awarded to either party with regard to the breach of contract.
The next issue before this court is whether the mechanic's lien should be discharged. The plaintiff placed a mechanic's lien on the building. The right to place a mechanic's lien on real estate for a claim in excess of ten (10) dollars for material furnished or services rendered in the construction of a building or in the improvement of a lot is established by General Statutes49-33. The purpose of the mechanic's lien is to give one who furnishes materials or services the security of the building and land for the payment of his claim by making such claim a lien thereon." HS Torrington Associates v. Lutz Engineering Co.,185 Conn. 549, 553, 441 A.2d 171 (1981); see also J.C. Penney Properties, Inc. v. Peter M. Santella Co., 210 Conn. 511, 514,555 A.2d 990 (1989). CT Page 4364
Only the owner of the real estate can bring an application for discharge of the mechanic's lien pursuant to General Statutes 49-35a. Henry F. Raab Connecticut. Inc. v. J.W. Fisher Co., 183 Conn. 108,113, 438 A.2d 834 (1981). The defendant here must prove by clear and convincing evidence the invalidity of the lien. Newton Association v. Northeast Structures, Inc., 15 Conn. App. 633,546 A.2d 310 (1988).
In accordance with the foregoing, the defendant has demonstrated by clear and convincing evidence that the mechanic's lien should be discharged. Such a conclusion stems from the fact that, as was discussed, supra, this court finds that the plaintiff breached the Contract by failing to substantially complete the building on or by October 1, 1989. Consequently, the mechanic's lien is hereby discharged.
Additionally, counsel for the defendants is entitled to attorney's fees for discharging the mechanic's lien. Guilford Yacht Club Assn. Inc. v. Northeast Dredging Inc., 192 Conn. 10
(1984). Consequently, counsel is awarded attorney's fees in the amount of $7,078.65.
Finally, this court finds that, from the evidence introduced at trial, the defendants wrongfully kept the plaintiff's tools and equipment. This court must consider the extent of damages to the plaintiff as a result of the defendants' wrongful conversion of the plaintiff's tools and equipment. The plaintiff concedes that its damages as to all of its tools, except for one aluminum extension ladder, is nominal. Plaintiff's Trial Brief, p. 22. However, this court is unable to determine the length of time during which the defendants wrongfully converted the equipment at issue. Therefore, a hearing will be held to resolve this specific matter unless the parties can stipulate as to the number of days the property was wrongfully converted, and thereafter, the court will assess damages for the conversion.
DRANGINIS, J.