LEVY, MILLER, MARETZ, LLC *v.* JOHN VUOSO
(AC 21537)

Foti, Mihalakos and Dupont, Js.

Argued February 25—officially released May 28, 2002

*Todd R. Bainer,* for the appellant (defendant).

*Edwin L. Doernberger,* for the appellee (plaintiff).

*Opinion*

MIHALAKOS, J. In this breach of contract action, the defendant property owner, John Vuoso, appeals from the judgment of the trial court, which awarded the plaintiff broker, Levy, Miller, Maretz, LLC, a real estate commission for the lease of the defendant's commercial property. On appeal, the defendant claims that the court incorrectly awarded a real estate commission, attorney's fees and court costs to the plaintiff. In support of his claim, the defendant contends that the court improperly interpreted our Supreme Court's decision in *John F. Epina Realty, Inc.* v. *Space Realty, Inc.,* 194 Conn. 71, 480 A.2d 499 (1984), as not controlling this case. The plaintiff argues that the defendant's reliance on *Space Realty, Inc.,* is misplaced and that he is equitably estopped from denying his obligations to the plain-

tiff.[1] We conclude that *Space Realty, Inc.*, is not applicable to the facts of this case and, therefore, we affirm the judgment of the trial court.

In its memorandum of decision, the court found the following facts. On February 8, 1995, the plaintiff and the defendant entered into a standard, exclusive right to sell/lease/exchange multiple listing contract concerning the defendant's commercial property at 281 Whalley Avenue in New Haven. The parties agreed that the exclusive right contract would remain effective for a six month period from February 8, 1995, until and including August 8, 1995. The exclusive right contract provided, inter alia, for a negotiable lease term with a rental amount of $2400 per month and a required two month security deposit. Also, under the terms of the contract, the plaintiff would be paid a commission for its services of either 5 percent or 6 percent, depending on how a lease was brokered. Further, the defendant agreed to place a sign on the property and to refer all inquiries or offers concerning the property during the contract period to the plaintiff.

During the term of the exclusive right contract, the plaintiff began marketing the property by posting a sign on it, listing it on what is known as the multiple listing service and distributing flyers to local property owners. The plaintiff also showed the property to prospective lessees and spoke about it at meetings concerning commercial real estate. Moreover, the plaintiff specifically alerted George Bradbury, a representative of Precision Tune,[2] that the property was available for lease or sale.

---

[1] The plaintiff relies on the doctrine of equitable estoppel as an alternate ground for affirmance. Although it is well settled that a court's judgment may be affirmed on a dispositive alternate ground that has support in the trial court record; *Pequonnock Yacht Club, Inc.* v. *Bridgeport*, 259 Conn. 592, 599, 790 A.2d 1178 (2002); we need not reach the plaintiff's alternate claim here because our ruling on the defendant's claim is dispositive.

[2] Precision Tune is an automotive maintenance and repair shop franchise.

Bradbury in turn informed James Testa, a Precision Tune franchisee, of the property's availability.

In October, 1995, the plaintiff learned from another real estate agency that the defendant and Testa, whose inquiries the defendant had not referred to the plaintiff, had signed a lease for the property about one month after the expiration of the contract period. Subsequently, the plaintiff billed the defendant for $8556, based on the 6 percent commission agreed to in their contract. On February 20, 1996, the plaintiff also filed a breach of contract action against the defendant, which later was withdrawn when the defendant sent two payments of $1750 each to the plaintiff. After receiving no further payments from the defendant, the plaintiff filed another breach of contract action against him to recover the balance of the commission, interest and attorney's fees. The defendant denied the alleged breach of contract, asserted three special defenses and filed a counterclaim, alleging breach of contract, misrepresentation and unfair trade practices on the part of the plaintiff.

Following a trial to the court, the court found that, although Testa and the defendant had signed their lease after the contract between the plaintiff and the defendant expired, the lease's terms and conditions were resolved within the exclusive time period reserved under the contract. The court then concluded that our Supreme Court's decision in *Space Realty, Inc.*, did not control the present case. Distinguishing the present case from *Space Realty, Inc.*, on its facts, the court noted that the property owner in *Space Realty, Inc.*, reserved the right to lease or sell his property on his own. The court further stated that the defendant in this case did not reserve such a right and plainly created a time limited exclusive right for the plaintiff to sell or lease the property. As a result, the court ruled that the defendant's reliance on *Space Realty, Inc.*, was misplaced.

Further, the court ruled that the defendant had failed to prove his special defenses and the bases of his counterclaim. Finally, the court ruled that the defendant was equitably estopped from denying his obligations to the plaintiff. Accordingly, the court ordered the defendant to pay $5056, the balance of the commission due, $6000 in attorney's fees and $213.20 in court costs for a total award of $11,269.20, and rendered judgment in favor of the plaintiff. This appeal followed. Additional facts and procedural history will be provided as necessary.

The defendant claims that the court improperly distinguished our Supreme Court's decision in *Space Realty, Inc.*, which the defendant contends is controlling in this case. We disagree.

Although it is clear that *Space Realty, Inc.*, concerns exclusive right agreements similar to the agreement underlying the present case,[3] the factual scenario

[3] The facts in *Space Realty, Inc.*, involved "an action to recover commissions in connection with the sale or lease of certain real estate and with the sale of a restaurant business, the realty and personalty having been under separate ownership." *Maretz-Franford, Inc.* v. *Kramer*, 7 Conn. App. 120, 126, 508 A.2d 35 (1986). In *Space Realty, Inc.*, the plaintiff broker and the defendants made several listing agreements, among which included one exclusive listing agreement and two exclusive right agreements. The exclusive listing agreement allowed the defendants the right to sell the property without paying a commission to the plaintiff, while the exclusive right agreements to lease and then to sell the property, respectively, did not provide for such a right. See *John F. Epina Realty, Inc.* v. *Space Realty, Inc.*, supra, 194 Conn. 73 n.1. On their own, the defendants began negotiations concerning the lease or sale of the restaurant business during the period of the first exclusive right agreement and finalized a lease agreement along with a collateral stock purchase agreement during the period of the second exclusive right agreement. See id., 74. The court determined that the defendants violated the second exclusive right agreement and that they owed the plaintiff broker a commission based on the value of the business sold. The parties appealed. See id., 75.

On appeal, the defendants claimed, inter alia, that the exclusive listing agreement reserved them the right to sell or lease their property without paying a commission and that this reservation of right was inherent in and controlling of the later exclusive right agreements. See id., 75–76. Focusing its analysis on the interpretation of the three agreements, our Supreme Court rejected the defendants' argument and determined that the trial court

involved in *Space Realty, Inc.*, and the issues resolved in that case are not dispositive of those involved here. In *Space Realty, Inc.*, our Supreme Court determined whether a reservation of right in an earlier exclusive listing agreement controlled the rights and obligations of the parties as expressed in two later exclusive right agreements, where the defendants had leased the subject property during the period of one of the later exclusive right agreements. See footnote 3. In this case, the court determined the rights and obligations of the parties under only one exclusive right agreement. Further, the court found that the defendant had agreed to lease his property to Testa during the period of the exclusive right agreement, but did not memorialize the lease agreement until after the period of the exclusive right agreement expired. We conclude, therefore, that the court correctly interpreted and distinguished *Space Realty, Inc.*, from this case on its facts.

On the basis of that critical finding, the court concluded that the defendant owed the plaintiff a commission. The defendant contends, however, that it is undisputed that the negotiations concerning the property did not conclude until the lease agreement was signed more than one month after the contract expired. He also contends, and the plaintiff agrees, that the court found that factors solely involving Testa's financing controlled the timing of the execution of the signed lease. This case turns ultimately, however, on the validity of the court's finding as to when the defendant and Testa agreed on the terms and conditions of the lease without regard to Testa's financing concerns.[4] Further,

could have properly credited the plaintiff's testimony that he explained the difference between the types of listing agreements to the defendants and the importance of those differences. Further, our Supreme Court noted that none of the agreements made reference to each other so as to incorporate the terms of any one into another. See id., 78.

[4] We recognize that the defendant pursues other minor claims within his main argument. We decline to review those claims, however, because they are not dispositive. See *Covino* v. *Pfeffer*, 160 Conn. 212, 217, 276 A.2d 895 (1970).

if the court's finding in that regard is sustainable, then our Supreme Court's decision in *Covino* v. *Pfeffer*, 160 Conn. 212, 276 A.2d 895 (1970), controls this case.

Our Supreme Court held in *Covino* that "[d]uring the life of an exclusive sale contract, an agreement between the owner and the ultimate purchaser to sell and buy, whether or not specifically enforceable, gives rise to a cause of action on the part of an exclusive broker who uses reasonable efforts to sell the property." Id., 215. "[I]f an owner, during the life of an exclusive sale contract, sells the subject property, the exclusive broker is entitled to his commission." Id., 217. Further, our Supreme Court rejected the owner's claim that an "owner shall not be deemed to have sold the property which is the subject of an exclusive sale contract unless and until negotiations with the prospective purchaser have been consummated into a binding and enforceable contract for sale." Id. The same rule of law established in *Covino* for exclusive right contracts for the sale of property necessarily applies by analogy to exclusive right contracts involving the leasing of property.

We now set forth our standard of review concerning a trial court's findings of fact. "If the factual basis of the court's decision is challenged, our review includes determining whether the facts set out in the memorandum of decision are supported by the record or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous." (Internal quotation marks omitted.) *Maloney* v. *PCRE, LLC*, 68 Conn. App. 727, 734, 793 A.2d 1118 (2002). Further, a court's inference of fact is not reversible unless the inference was arrived at unreasonably. See *John F. Epina Realty, Inc.* v. *Space Realty, Inc.*, supra, 194 Conn. 78. We note as well that "[t]riers of fact must often rely on circumstantial evidence and draw inferences from it. . . . Proof of a material fact by inference need not be

so conclusive as to exclude every other hypothesis. It is sufficient if the evidence produces in the mind of the trier a reasonable belief in the probability of the existence of the material fact." (Citation omitted; internal quotation marks omitted.) *Coville* v. *Liberty Mutual Ins. Co.*, 57 Conn. App. 275, 285, 748 A.2d 875, cert. granted on other grounds, 253 Conn. 919, 755 A.2d 213 (2000) (appeal withdrawn March 30, 2001). Moreover, it is the exclusive province of the trier of fact "to weigh the conflicting evidence, determine the credibility of witnesses and determine whether to accept some, all or none of a witness' testimony." (Internal quotation marks omitted.) *Hoffer* v. *Swan Lake Assn., Inc.*, 66 Conn. App. 858, 861, 786 A.2d 436 (2001). Thus, if the court's dispositive finding here was not clearly erroneous, then the judgment must be affirmed.

The record discloses the following testimony relevant to the court's finding. At trial, Testa stated that negotiations with the defendant for the property took place without a real estate agent or anyone else present and began about three or four months before the signing of the lease. Testa stated that he never had any contact with the plaintiff concerning the property, which is a fact that the plaintiff's agent confirmed. Further, Testa stated that the defendant did not ask him to delay signing the lease until after his contract with the plaintiff expired. Instead, Testa testified that the lease was signed after the contract expired because he desired to sign it only when he was properly financed.

Testa agreed that he and the defendant signed the lease document in September, 1995, but that the document, marked with unidentified initials, referenced a date sometime in August, 1995, which was unreadable because it was crossed out. Testa then stated, however, that he did not believe that there was a specific August date placed on the document, but he agreed that some-

one's initials were on the document. Still later, Testa testified that he did not know who scratched out the August date on the document.

Testa also stated that he first saw the defendant's property "as early as June and obviously as late as August [1995]," but that he could not remember the exact date. Testa agreed that negotiations began when he saw the property or shortly thereafter. Testa stated that negotiations took approximately one month to complete and that the terms of the lease were agreed to for at least some period of time before he signed the lease. Testa also testified that negotiations commenced in the middle of August, 1995, and that he signed the lease on September 11, 1995. The defendant testified that his negotiations with Testa began in June, 1995, and that he did not refer Testa to the plaintiff.

On the basis of that conflicting testimony, the court reasonably could have found that the defendant showed Testa his property in June, 1995, and began negotiations with him at that time. Further, it would not have been unreasonable for the court to have found that those negotiations concluded about one month later in July, 1995, and within the period of time reserved under the exclusive right contract between the defendant and the plaintiff. Moreover, it is undisputed that the defendant had an exclusive right contract with the plaintiff that ran from February 8, 1995, until and including August 8, 1995.

We conclude, therefore, that the relevant factual findings set out in the court's memorandum of decision are supported by the record and thus are not clearly erroneous. We further conclude, relying on *Covino*, that the plaintiff therefore is entitled to its commission on the lease agreement between Testa and the defendant by virtue of the defendant's breach of the exclusive

right contract with the plaintiff. Thus, the court properly rendered judgment in favor of the plaintiff.

The judgment is affirmed.

In this opinion the other judges concurred.