Thomas J. Agnew et al. *v.* I. R. Stich Associates, Inc.

Appellate Division of the Circuit Court

File No. CV 12-6404-4173

Argued May 3—decided August 4, 1965

*Harry Hammer,* of Rockville, for the appellants (plaintiffs).

*Michael Schless,* of Hartford, for the appellee (defendant).

Pruyn, J. The plaintiffs brought this action to recover a deposit paid the defendant under a con-

tract that it would sell them a plot of land with a dwelling to be erected thereon by it, and also to recover certain expenses in connection therewith incurred by them. The plaintiffs claimed that the contract was broken by the defendant. The defendant filed an answer denying any breach and counterclaiming for damages for a breach of the contract by the plaintiffs. The defendant prevailed in the trial court on both the complaint and the counterclaim, the court awarding to it total damages of $1259.23, consisting of nominal damages of $10, loss of $490 on the subsequent sale of the property, and adjustments of $759.23 for taxes, interest and insurance, upon which the plaintiffs' deposit of $1000 was credited, and rendering judgment for the defendant for $259.23 on the counterclaim.

The finding, which does not warrant correction, reveals the following facts: The plaintiffs and the defendant on June 24, 1963, entered into an agreement for the sale by the defendant and the purchase by the plaintiffs of a plot of land on Brian Drive in Manchester, with a dwelling to be constructed thereon by the defendant, the plaintiffs paying a deposit of $25. The agreement contained a clause that it would "remain in effect until August 15, 1963, at which time it may be extended or terminated by the purchaser or owner," and a further clause that if the purchaser was unable to obtain a $14,000 mortgage, the agreement would be null and void and the deposit forthwith returned. The agreement provided for a closing date of on or before September 15, 1963. On June 24, 1963, the plaintiffs owned and lived in a home on Tower Road, Manchester. They notified the defendant that it was economically desirable to sell the Tower Road property so that the funds received might be applied on the price of the Brian Drive property. The written agreement contained no provision that the deposit was to be

returned unless the Tower Road property was sold. On August 6, 1963, the plaintiffs applied to the State Savings Bank for a $14,000 mortgage on the Brian Drive property. On August 14, 1963, the bank made a commitment of a $14,000 first mortgage and so notified the plaintiffs. On August 17, 1963, the plaintiffs made a further deposit under the contract of $975, making a total deposit of $1000. Thereupon the defendant proceeded to construct the dwelling according to the agreed-upon plans and specifications. Prior to August 17, 1963, the plaintiffs had contracted to sell the Tower Road property and had received a $500 deposit; this sale subsequently was not made. At the plaintiffs' request, the bank's $14,000 mortgage commitment was extended to October 31, 1963, reextended to December 16, 1963, and again extended to February 16, 1964. The agreement, according to its terms, was extended on August 15, 1963. This extension was granted by the defendant to assist the plaintiffs in effecting a sale of the Tower Road property; it was not conditioned on their ability to sell the Tower Road property, nor was their ability to secure a $14,000 mortgage so conditioned. The only conditions of the bank's commitment was that the title must be clear and the loan closed by a date certain.

The dwelling house erected by the defendant on the premises was substantially completed by September 15, 1963, the work remaining to be done consisting of decorating and grading. In September, 1963, prior to September 15, 1963, the plaintiffs notified the defendant of their inability to perform the written agreement according to its terms. The various extensions were sought by the plaintiffs and were consented to by the defendant to keep the agreement binding until the balance of the purchase price could be obtained and were not conditioned on any specific manner of obtaining such balance.

The time of conveyance of the property was extended by mutual agreement from time to time through January 10, 1964. Between August 16, 1963, and January 10, 1964, the plaintiffs, with the defendant's assistance, made many efforts to dispose of their Tower Road property. On January 24, 1964, the plaintiffs notified the defendant that the agreement was at an end and demanded the return of the $1000 deposit. Subsequently, the premises were sold to a third party for $490 less than the price agreed upon between the plaintiffs and the defendant. The defendant paid taxes, interest and insurance subject to adjustment under the terms of the agreement and adjusted as of the date of the breach, January 24, 1964, and also pursuant thereto contributed to the cost of wallpaper selected by the plaintiffs. There was no evidence of any contract between the defendant and the wallpaper company.

The two basic issues raised by the plaintiffs are that there was no enforceable contract between the parties subsequent to September 15, 1963, the date for closing of title specified in the agreement, and secondly even if there was an enforceable agreement it was conditioned on the sale of their Tower Road property. As to the first issue, the facts found belie the plaintiffs' claim. When the plaintiffs made the deposit of $975 on August 17 the contract became a complete binding agreement. The defendant then commenced the construction of the house, which was substantially completed by September 15, 1963, except for grading and decorating. Prior thereto, the plaintiffs notified the defendant that they were unable to perform the agreement according to its terms. Various extensions were sought by the plaintiffs and consented to by the defendants to keep the agreement binding upon them after September 15, 1963. The agreement specifically provided for extensions, and these having been mutually agreed to,

the agreement was in effect at the time the plaintiffs demanded the return of their deposit.

The plaintiffs then argue that if the agreement remained in effect after September 15, 1963, it was subject to a condition precedent that their Tower Road premises were to be sold, a condition which was not fulfilled through no fault on their part, and that they were thus excused from performance and entitled to recover their deposit. "A condition precedent is a fact or event which the parties intend must exist or take place before there is a right to performance. . . . If the condition is not fulfilled, the right to enforce the contract does not come into existence. . . . Whether a provision in a contract is a condition the nonfulfilment of which excuses performance depends upon the intent of the parties, to be ascertained from a fair and reasonable construction of the language used in the light of all the surrounding circumstances when they executed the contract." *Lach* v. *Cahill,* 138 Conn. 418, 421. In the case before us the agreement contained a condition precedent in respect to the obtaining of a mortgage, which condition was met by the bank's commitment, but there was no mention at all in the agreement of the sale of the Tower Road property. While the defendant knew that it was economically desirable that the property be sold so that the funds received therefrom could be used to purchase the property of the defendant, and while the defendant's agents attempted to effectuate a sale, none of the extensions of the agreement or mortgage commitment were specifically conditioned on the sale of the Tower Road property. The parties having specifically incorporated in the written agreement a provision for extension or termination and a condition that if the plaintiffs could not obtain a $14,000 mortgage the agreement would be null and void and the deposit returned, and having not included a provision for

the return of the deposit if the Tower Road property was not sold, it would be unreasonable to suppose that the parties would agree to this additional provision of the same character without reducing it to writing. *Nagel* v. *Modern Investment Corporation,* 132 Conn. 698, 701.

It is a well-settled rule that when the parties have merged all prior negotiations and agreements in a written agreement, intending it to be the final agreement, the court cannot modify the agreement or make a new one for the parties, and evidence of the unexpressed agreement, if any, is not admissible to vary the terms of the written agreement. "If, however, it appears that a collateral agreement not contained in the written agreement was entered into contemporaneously therewith, it may be proved by parol." *Harris* v. *Clinton,* 142 Conn. 204, 210. "Whether the parties intended the writing to embody their entire oral agreement or only a part of it, was a question for the trial court, to be determined from the conduct and language of the parties and the surrounding circumstances"; and the trial court's determination will not be reviewed on appeal unless the record shows an error of law or of logic in reaching it. *Brosty* v. *Thompson,* 79 Conn. 133, 136. We see no such error.

The breach of the contract by the plaintiffs in notifying the defendant that the contract was at an end and demanding the return of the deposit absolved the defendant from any obligation to tender performance or to allege any tender or that it was ready, willing and able to perform. *Federal Finance Co.* v. *Forman Properties, Inc.,* 135 Conn. 153, 158.

On the defendant's counterclaim for damages caused by the plaintiffs' breach of the contract, the defendant is entitled to recover such compensation as would leave it as well off as it would have been if

the contract had been fully performed; *Bachman* v. *Fortuna,* 145 Conn. 191, 194; including nominal damages and the expense incurred in preparing to carry out the agreement. *Gray* v. *Greenblatt,* 113 Conn. 535, 537. The trial court correctly applied this rule.

There is no error.

In this opinion KOSICKI and LEVINE, Js., concurred.