WILLIAM A. DIBELLA *v.* GARY WIDLITZ ET AL.
(13326)

PETERS, C. J., HEALEY, GLASS, COVELLO and HULL, Js.

Argued March 1—decision released April 26, 1988

*Bourke G. Spellacy,* with whom, on the brief, was *Peter R. Huntsman,* for the appellant-appellee (plaintiff).

*Irving H. Perlmutter,* with whom, on the brief, was *Gary P. Sklaver,* for the appellees-appellants (defendants).

PETERS, C. J. The dispositive issue in this case is whether the trial court abused its discretion when it denied specific performance of a contract to a buyer of real estate who failed to establish that he was ready, willing and able to perform at the date set for the closing. The plaintiff, William A. DiBella, brought an action seeking specific performance and damages because of the refusal of the defendants, Gary Widlitz and Patricia M. Widlitz, to convey certain real property located in Westbrook. After a hearing, the trial court rendered a judgment for the defendants. Both parties have appealed. Because we find no error on the plaintiff's appeal, we need not consider the appeal of the defendants.

The trial court found the following facts. In a contract dated September 5, 1983, the defendants agreed to sell the plaintiff certain beachfront property in Westbrook for $190,000 toward which the buyer made a down payment of $7000. Because of a pending zoning appeal, the date of closing was by mutual agreement postponed to be held within thirty days after the appeal had terminated in favor of the defendants. On April 18, 1985, the defendants notified the plaintiff that the zon-

ing matter had been favorably resolved and asked for a closing. Despite the defendants' repeated requests for a prompt closing date, the plaintiff, a Connecticut state senator, insisted on delay until the termination of his legislative commitments on June 4, 1985. When the defendants sought additional security because of this delay, the plaintiff not only refused to post an additional deposit but informed them that he had filed the contract of sale on the land records.

At a meeting at the site on June 14, 1985, the parties agreed that a closing would be held on July 22, 1985. At that meeting, problems relating to an access road and a foundation were resolved, and the plaintiff received assurances from the defendants that he would receive a written easement for water from an adjoining landowner. The plaintiff's attorney thereupon wrote the defendants that the closing date was to be July 23, 1985. When the plaintiff did not appear for the closing as scheduled, the defendants contacted the plaintiff and personally informed him that July 26, 1985, at 5 p.m. was a final closing date and time. The plaintiff did not demur orally, but sent a letter of protest, on July 25, 1985, by regular mail. As of July 23 and July 26, 1985, the plaintiff was not in fact ready, willing and able to proceed with the closing. Because of the plaintiff's failure to appear for the scheduled closing on July 26, 1985, the defendants, on July 27, 1985, gave him notice that the contract of sale had been terminated.

On July 29, 1985, the plaintiff went to the office of the defendants' attorney with two checks sufficient to cover the unpaid balance of the purchase price. He announced his willingness to waive any claimed problems relating to the purchase, and was ready to close

the deal. Due to their previous termination of the contract, the defendants refused to proceed further.[1]

On the basis of these facts, the court concluded that the plaintiff could not prevail. It held that "the plaintiff was not ready, willing and able to fulfill his part of the contract until after the contract had been rescinded. Although he had funds available on the 29th, they became available subsequent to July 26th, the final day set by the defendant[s]." The court determined that the equitable remedy of specific performance was unwarranted because of the dilatory conduct of the plaintiff or his representatives, which had justified the defendants' good faith insistence on a termination date for the contract of sale. The court also held that the plaintiff had adduced insufficient evidence to justify awarding him damages.

The plaintiff's appeal raises four claims of error. The plaintiff alleges that the trial court erred: (1) in finding that, on July 24 or 25, 1985, the defendants had given sufficient notice of a final date for the closing of the sales contract; (2) in concluding that the plaintiff was obligated to prove his ability to perform when the defendants had not, at that time, provided him with adequate water rights; (3) in excluding the testimony of the plaintiff's proffered expert witness; and (4) in failing to award damages to the plaintiff. We find no error.[2]

---

[1] The record indicates that the defendants tendered the return of the plaintiff's down payment to him, but that he did not accept the tender. In light of our disposition of this case, we assume that the plaintiff is now entitled to the return of his down payment. See *Montanaro Bros. Builders, Inc.* v. *Snow,* 190 Conn. 481, 489, 460 A.2d 1297 (1983).

[2] The defendants' cross appeal alleges that the trial court erred in foreclosing repeated efforts by the defendants to inquire into the plaintiff's financial ability to consummate the sale. In light of our disposition of the plaintiff's appeal, these issues have become moot.

## I

The plaintiff launches two different attacks on the trial court's finding that he was not entitled to specific performance because, on July 26, 1985, he was not ready, willing and able to perform. First, the plaintiff challenges the court's essentially factual finding that July 26 was the final date for closing and that the plaintiff had sufficient notice of that date. Second, he challenges the court's legal conclusion that he was obligated to prove his ability to perform when the defendants allegedly had not yet fulfilled all the conditions stated in the contract of sale.

The plaintiff's claim with regard to the trial court's finding of fact need not long detain us. Under familiar principles of appellate review, a trial court's factual finding will not be reversed or modified unless it is "clearly erroneous in view of the evidence and pleadings in the whole record." Practice Book § 4061; *Gorra Realty, Inc.* v. *Jetmore,* 200 Conn. 151, 159–60, 510 A.2d 440 (1986); *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980). Despite the plaintiff's argument to the contrary, we conclude that the court could reasonably have found that the plaintiff, through his attorney, had expressly, after extended delays, agreed to a closing on July 23, 1985, which he failed to attend. Thereafter, the plaintiff's attorney was expressly informed that no further extension of time would be permitted after July 26, 1985. On this factual record, the court could reasonably find that the plaintiff was apprised in a timely manner of the date on which the contract would terminate. In light of the factual circumstances as a whole, it was not clearly erroneous for the court to determine that

this final extension was a legitimate response to the plaintiff's dilatory tactics.[3]

The plaintiff's more serious claim is his argument that his own nonperformance was excused on the ground of the defendants' alleged failure to complete their performance with respect to the water supply for the property he was buying. That argument is unpersuasive because it confuses the consequences of contractual stipulations that operate to condition a seller's right to demand performance with a buyer's obligation to establish his own entitlement to the discretionary, equitable relief of specific performance.

In this case, had it been the defendants who had come to court seeking specific performance from the plaintiff, they might have encountered difficulties in persuading a court to grant them this remedy without a showing of a written modification or an express waiver of the contract provisions concerning a water source for the property at issue. As the plaintiff reminds us, we have held, in an action by a seller of services, that "[o]ne cannot recover upon a contract unless he has fully performed his own obligation under it, has tendered performance, or has some legal excuse for not performing." *Automobile Ins. Co.* v. *Model Family Laundries, Inc.,* 133 Conn. 433, 437, 52 A.2d 137 (1947).[4]

The lesson to be drawn from *Automobile Ins. Co.* is that a buyer who seeks specific performance must dem-

[3] Although the designation of a specific time for payment or conveyance under a real estate contract does not automatically make time of the essence, such a stipulation can effectively set a final date for performance when the sellers have given proper notice of their intent to have a final closing and have manifested their continued interest in fulfillment of the contract. *Kakalik* v. *Bernardo,* 184 Conn. 386, 392–94, 439 A.2d 1016 (1981).

[4] In contracts for the sale of land, both buyers and sellers under proper circumstances may be entitled to specific performances. See 3 Restatement (Second), Contracts § 360, comment e (1981).

onstrate his own compliance with the obligations the sales contract imposes upon him. The plaintiff's amended complaint contains the standard allegation that he was "at all times [material to this action] . . . ready, willing and able to pay . . . . " We have repeatedly held that a trial court may justifiably withhold equitable relief from a buyer who, put to his proof on such an allegation, fails to satisfy his burden of demonstrating his financial ability to purchase the property. *Frumento* v. *Mezzanotte,* 192 Conn. 606, 615–17, 473 A.2d 1193 (1984); *Allen* v. *Nissley,* 184 Conn. 539, 540–42, 440 A.2d 231 (1981); *Eastern Consolidators, Inc.* v. *W. L. McAviney Properties, Inc.,* 159 Conn. 510, 510–11, 271 A.2d 59 (1970). A buyer must prove his financial ability to go forward even when a seller entirely refuses to participate in a closing. *Frumento* v. *Mezzanotte,* supra, 616. A fortiori, the plaintiff in this case was not relieved of his burden of proving his ability to meet his financial obligations under his contract of purchase because of any alleged failure on the defendants' part to satisfy any condition that the contract contained.

On this crucial aspect of the plaintiff's case, the trial court made the following express finding: "As of July 23rd and July 26th, the plaintiff was not ready, willing and able to proceed with the closing not having arranged a mortgage commitment in accordance with the terms of the agreement." In his appeal, the plaintiff does not directly challenge this finding of fact. Indirectly, the plaintiff appears to rely on his personal appearance, checks in hand, for an unannounced and unscheduled closing at the office of the defendants' attorney three days subsequent to the final date for closing. He also adverts to his production at trial of an unsigned mortgage commitment that had, by its own terms, expired long before the final date for closing.

Neither singly nor jointly does this evidence raise any doubt about the validity of the trial court's finding that, within the time frame for a final closing that the court found to be reasonable, the plaintiff had failed to meet his burden of proving his financial ability to perform. In light of this finding of fact, the trial court cannot be faulted for denying the plaintiff's request for specific performance.

## II

If he cannot prevail in his claim for specific performance, the plaintiff urges us to hold, in the alternative, that he was at least entitled to recover damages from the defendants. The trial court refused to make such an award on the ground that "[t]here was insufficient evidence adduced to justify awarding any damages to the plaintiff in this case."[5] The plaintiff maintains that the trial court's conclusion was in error for two reasons: (1) the court wrongly excluded the testimony of his expert witness, Peter Bonanno; and (2) even without the Bonanno testimony, the plaintiff had established a financial loss for which the defendants were liable. We are unpersuaded.

The plaintiff offered Peter Bonanno, a real estate agent, to testify to the increased value, at the time of trial, of the real property that was at issue in this case. Bonanno had been a real estate agent in Westbrook, where the property was located, and in the adjoining towns of Old Saybrook and Essex, since 1977. He was familiar with listing prices and sales prices as part of his professional access to multiple listing services. He

[5] The trial court might have dispensed of this claim as encompassed by its earlier finding that the defendants had justifiably terminated the contract. Since the trial court might, however, have addressed the damages claims independently, we will review the plaintiff's claims of error on this basis.

had no demonstrated expertise, however, in property appraisals, having taken no training in that subject and having not previously testified about real property values in any judicial proceeding. Furthermore, he had undertaken no special study to determine the value of the property at issue, or comparable property, during the relevant time period, 1985 to 1986. On this limited showing, the trial court sustained the defendants' objection to Bonanno's qualifications to testify as an expert. The court stated: "By no means have you established this man as an expert, even close to an expert, on the appraisal of real estate."

Whether a witness is qualified to testify as an expert is a matter that rests in the sound discretion of the trial court. *State* v. *Ortiz,* 198 Conn. 220, 228, 502 A.2d 400 (1985); *State* v. *Wilson,* 180 Conn. 481, 489–90, 429 A.2d 931 (1980); *Siladi* v. *McNamara,* 164 Conn. 510, 513, 325 A.2d 277 (1973); 2 B. Holden & J. Daly, Connecticut Evidence (1988) § 118 (a). The role of an expert witness is to furnish the trier with special guidance drawn from his or her particular training, knowledge or experience. See, e.g., *State* v. *Hanna,* 150 Conn. 457, 460, 191 A.2d 124 (1963). In the circumstances of this case, we conclude that the trial court did not abuse its discretion in determining that Bonanno had not been shown to have such special competence with regard to property valuation that his expert testimony on that subject should have been admitted into evidence.

Apart from Bonanno, the only other evidence that the plaintiff introduced to justify an award of damages was the testimony of Nicola Ferzacca, an architect. This witness testified to substantial increases in building costs between 1986 and 1987. With respect to the building project for which he had prepared conceptual drawings on the plaintiff's behalf, Ferzacca estimated that the costs of construction would have increased by $51,000 during that year, and that additional architect's

fees would have added a further $6000 to the overall cost.

The fact that this evidence was placed on the record does not, however, establish the plaintiff's right to recover damages. The trial court might have been unpersuaded of the probative value of Ferzacca's testimony; see *Transportation Plaza Associates* v. *Powers*, 203 Conn. 364, 378, 525 A.2d 68 (1987); *Ferri* v. *Pyramid Construction Co.*, 186 Conn. 682, 690, 443 A.2d 478 (1982); or it might have concluded that there was an insufficient causal connection between increased building costs and the defendants' termination of the contract for the sale of the real property. Moreover, as an adjunct to a claim for specific performance, the plaintiff's claim for damages invoked the trial court's discretionary authority to grant or to withhold monetary relief in light of the equities of the case. *Allen* v. *Nissley*, supra, 546–47; *Cohen* v. *Meola*, 184 Conn. 218, 221, 439 A.2d 966 (1981); *Heyman* v. *CBS, Inc.*, 178 Conn. 215, 229, 423 A.2d 887 (1979). From this perspective, the court might have concluded that whatever damages the plaintiff had suffered were as attributable to his own dilatory tactics as to the defendants' conduct in insisting on a final date for closing.

The precise basis for the trial court's decision on damages is unclear, the court having noted only that there was "insufficient evidence" to justify such an award. In such circumstances, a party who is dissatisfied with the ruling of the trial court must take the laboring oar of seeking an articulation of its reasoning. Practice Book § 4051; *Barnes* v. *Barnes*, 190 Conn. 491, 493, 460 A.2d 1302 (1983); *Carpenter* v. *Carpenter*, 188 Conn. 736, 739 n.2, 453 A.2d 1151 (1982); *Kaplan* v. *Kaplan*, 186 Conn. 387, 388 n.1, 441 A.2d 629 (1982). Absent a record that demonstrates that the trial court's reasoning was in error, we presume that the trial court correctly analyzed the law and the facts in rendering

its judgment. See *Timm* v. *Timm,* 195 Conn. 202, 206, 487 A.2d 191 (1985). We therefore have no grounds for overturning the trial court's decision not to award the plaintiff damages.

There is no error on the appeal; the cross appeal is dismissed as moot.

In this opinion the other justices concurred.