[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs brought this action claiming damages consisting of the amount of their deposit of $31,500.00 paid to the defendants pursuant to a contract of purchase and sale for a new home dated November 3, 1987.
The amended complaint contains five counts. Prior to trial, the plaintiffs withdrew the second count against Burton and Margaret Talmadge. The first count alleges a cause of action against the defendant, Robert Berube, Inc., for failure to close on May 1, 1988 or within a reasonable time thereafter. The remaining counts are directed to the defendant, Harold Smith Realty Company. The third count seeks return of the deposit from Smith as escrow agent. The fourth count claims that Smith, without authority, turned the deposit over to the defendant, Berube, in violation of Section 20-324k of the General Statutes. The fifth count claims that Smith intentionally mispresented the CT Page 3405 plaintiffs' wishes with respect to the closing. The defendant, Berube, counterclaimed for damages allegedly caused by plaintiffs' failure to perform the contract.
Based on a preponderance of the credible evidence, the court finds the following material facts proven
On November 3, 1987, the Dineharts and Berube, entered into the contract which is the subject of the action. The contract called for Berube, as seller, to build a house in accordance with the Dineharts' plan on lot No. 1, Hunting Ridge, Hamden, Connecticut, and to sell the land and building to the plaintiffs. Although the contract specified a closing date of May 1, 1988, both parties knew at the time they entered into the contract that, because of the time necessary to obtain approvals and permits and to construct the house, a closing by May 1, 1988 was improbable. Thus, a closing on May 1, 1988 was not an essential term of the contract. The contract contained no provision for liquidated damages.
The price to be paid to Berube by the Dineharts under the contract including the addendum, was $331,700.00. Although several additional extras were claimed by Berube, they were not satisfactorily proven. A deposit of $31,500.00 was paid by the plaintiffs and used by Berube in constructing the house. There were no financing contingencies in the contract.
Berube began obtaining approvals and permits shortly after the contract was signed. No unusual delays were encountered in this process. The building permit was issued on March 25, 1988 and construction began shortly thereafter. Construction of the house continued at a normal pace without unusual delays until the summer of 1988 when, plaintiffs, through Smith, indicated that a slow down of the pace of construction would be desirable or, at least, acceptable because they were having difficulty selling their home. Plaintiffs needed to sell their existing home in order to be able to pay for the new house. However, there was no financing condition in the contract and, prior to the summer of 1988, the plaintiffs did not inform Smith of their need to sell the existing home, Berube would not have entered into a contract for a new home construction with a financing condition.
The house was substantially completed by October, 1988 although Berube never secured a Certificate of Occupancy. Only the exterior staining, installation of kitchen cabinets and floor coverings and the interior painting remained to be completed. The cost to complete the house is $30,000.00. During 1988 and 1989, Berube, on several occasions, requested that a closing date be set so he could complete the house and close the transaction. The plaintiffs, however, were not able to close because they had not CT Page 3406 sold their house and did not have the balance of the purchase price necessary to purchase the house.
On May 8, 1989, the plaintiffs notified Berube that they did not intend to perform and wished to be repaid their deposit. They did not then request a closing date nor were they able, at that point, to purchase the house. As of May 8, 1989, Berube was ready, willing and able to perform the contract within a reasonable period of time. The present balance (principal and interest) of Berube's first mortgage is $44,000.00; the balance on the second mortgage is $220,000.00. Closing costs, taxes, fees and commission would be $12,000.00.
After May 8, 1989, the defendant marketed the property through two real estate brokers but was not able to sell it.
The principal issue presented in this case is whether, where a closing date is specified but, under the circumstances, not intended to be complied with, and where a "time is of the essence" provision is not specified in the agreement, may the buyer rescind for failure of the seller to close on or after that date?
The secondary issues involved are whether the buyers must first offer a closing date; and whether the buyers must demonstrate that they are ready, willing and able to close?
The fact that a contract states a date for performance does not necessarily make time of the essence of the contract. Grenier v. Compratt Construction Co., 189 Conn. 144, 151 (1983); Fullerton v. McGowan, 6 Conn. App. 624, 629 (1986). "The law is that a day fixed in a contract for closing title, without more is merely formal; but if it is stipulated that time is of the essence, or if the circumstances are persuasive that that is the case, prompt performance is essential, and it is also the law that where the time fixed is regarded as a formality only, and the period has gone by, or where time is of the essence and there is a waiver, that time may nevertheless be made of the essence by formal demand that the title be closed by a given day; but the time given must be reasonable." Fullerton, 6 Conn. App. at 629.
If a plaintiff by his conduct waives the right to strict compliance with the provisions of the contract as to the time of performance, the plaintiff cannot thereafter take advantage of the provision of the contract stipulating the time so long as the defendant was making reasonable efforts to perform within a reasonable time. Bradford Novelty Co. v. Technomatic, Inc.,142 Conn. 166, 171 (1955). What constitutes a reasonable time is a question of fact. Id.
If buyers seeks to obtain specific performance, they must CT Page 3407 first prove that they were ready, willing and able to purchase the property. DiBella v. Widlitz, 207 Conn. 194, 199-200 (1988); McKenna v. Woods, 21 Conn. App. 528, 534 (1990). The buyer must demonstrate their own compliance with the obligations imposed by the contract. DiBella, 207 Conn. at 200. If buyers seek equitable relief from the trial court, they must satisfy the burden of proof of demonstrating financial ability to purchase the property. Id. "A buyer must prove his financial ability to go forward even when a seller entirely refuses to participate in a closing." Id.
In this case, the Dineharts are seeking recission of the contract and restitution in the amount of the deposit tendered to the agent. It is clear that the plaintiffs were obligated to make a formal demand that the property be closed by a certain date giving Berube a reasonable time to complete the home. Further, the Dineharts had the obligation to demonstrate that they were ready, willing and financially able to purchase the house. Because they failed to satisfy those conditions, they are not entitled to recover their deposit.
The next issue is whether, buyers having breached, the seller may recover damages if the seller has not completed performance.
"[O]ne cannot recover upon a contract unless he has fully performed his own obligation under it, has tendered performance, or has some legal excuse for not performing." DiBella v. Widlitz,207 Conn. 194, 199 (1988); Argentinis v. Gould, 23 Conn. App. 9,14 (1990). However, the doctrine of substantial performance contemplates the performance of all items of a building contract except for minor details, those easily remedied by minor expenditures. Argentinis, 23 Conn. App. at 14. "There is no reason why one who has substantially performed . . . a [building] contract, but unintentionally failed of strict performance in the matter of minor details, should have imposed upon him as a condition of recovery for that of which the other party has received the benefit, the burden of showing by direct evidence its reasonable value, or why he should be deprived of all benefit of the contract which he has substantially performed." Edens v. Kole Construction Co., 188 Conn. 489, 494 (1982); Nor'easter Group, Inc. v. Colossale Concrete, Inc., 207 Conn. 468, 472 (1988). Substantial performance of a building contract is ordinarily a question of fact for the trier to determine. Id.
In Vincenzi v. Cerro, 186 Conn. 612, 614 (1982), the date when the certificate of occupancy was obtained was deemed by the court to be the date when the contract had been substantially performed. Even a conscious and intentional departure from the contract specifications will not necessarily defeat recovery, but may be considered as one of the several factors involved in CT Page 3408 deciding whether there has been full performance. Id. at 615-16. The pertinent inquiry is not simply whether there was a wilful breach, but whether the behavior of the defaulting party comports with standards of good faith and fair dealing. Id. at 616. "Even an adverse conclusion on this point is not decisive but is to be weighed with other factors, such as the extent to which the owner will be deprived of a reasonable expected benefit and the extent to which the builder may suffer forfeiture, in deciding whether there has been substantial performance." Id.
Furthermore, the breach of a contract by the plaintiffs in notifying the defendant that the contract was at an end and demanding the return of the deposit absolves the defendant from the obligation to tender performance or to allege any tender or that it was ready, willing and able to perform. Federal Finance Co. v. Forman Properties, Inc., 135 Conn. 153, 158 (1948); Agnew v. I. R. Stich Assoc., Inc., 3 Conn. Cir. Ct. 336, 341 (1965).
The final question presented is what measure of damages must be applied to determine the damages to be awarded to the seller?
The general rule in a breach of contract situation is that the injured party is entitled to an award of damages designed to place that party, so far as can be done by money, in the same position as that in which he would have been had the contract been performed. Beckman v. Jalich Homes, Inc., 190 Conn. 299, 309
(1983); Williams v. Breyer, 21 Conn. App. 380, 384 (1990). In making the assessment of damages for breach of a construction contract, the trier must determine the existence and extent of any deficiency and then calculate its loss to the injured party. Beckman, 190 Conn. at 309-10. The determination of both these issues involves a question of fact. Id. at 310.
This contract rule is designed to compensate the injured party for the loss of the bargain. Williams,21 Conn. App. at 384. The standard measure of damages for breach of a contract for sale is the difference between the contract price and the market value of the property at the time of the breach reduced by the amount of any deposits made by the buyer toward the purchase price. Id. This must also be reduced by the cost of completion. Adapting that rule to this case, the appropriate measure is the purchase price ($331,700.00) less seller's costs, consisting of the mortgage balance (principal and interest $264,000.00), cost of completion ($30,000.00), and closing costs, real estate commission, fees and taxes ($12,000.00). Berube is entitled to the difference as damages.
Accordingly, judgment may enter in favor of the defendants on the complaint and in favor of defendant Berube on the counterclaim in the amount of $25,700.00. The plaintiffs are entitled to CT Page 3409 return of the deposit balance of $5800.00. Stabenek v. Cairelli,22 Conn. App. 578 (1990); Vines v. Orchard Hills, Inc., 181 Conn. 501
(1980). Because the plaintiffs failed to prove their cause of action against the defendant, Smith Realty Co., judgment is entered in favor of that defendant on the third, fourth and fifth counts of the complaint.
BARRY R. SCHALLER, Judge