[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for breach of contract where the plaintiffs Albert and Amanda Amundsen, d/b/a Wright's Mill Tree Farm allege that they and the defendants the Phoenix Home Life Employees Club CT Page 13516 (Club); Judith Geary, the Club's president; Joy Brouwer, an agent for the Club; and, the Phoenix Home Life Mutual Insurance Company, entered into an express contract for the purpose of conducting an outing for Club members and their guests at the tree farm on June 18, 1994; that the outing took place according to the terms of the agreement; and that the defendants have failed to pay sums due under the contract. The defendants deny that the plaintiffs substantially fulfilled their obligations under the contract and counterclaim for damages based on alleged breach of contract and misrepresentation by the plaintiffs. A trial to the court was heard on October 24 and 25, 1995. The plaintiffs' case against Phoenix Home Life Mutual Insurance Company and Joy Brouwer, now Joy Ottani, was dismissed previously.
The court finds the following facts. Sometime in January 1994, Ottani, a member of the Club's social committee, heard about the plaintiffs' farm and contacted the plaintiffs' booking agent, Deborah Gardiner, to investigate the possibility of holding the Club's annual picnic at the plaintiffs' picnic grounds in June 1994. Gardiner sent a brochure describing the facilities activities menus, and programs available at the farm. Ottani spoke to Gardiner again on January 19, 1994, and arranged to meet with Gardiner at the farm.
On February 9, 1994, Ottani and Karen Santi, another social committee member, visited the site and discussed the outing needs with Gardiner. As a result of these discussions Gardiner prepared a proposal incorporating the desired activities and menu modifications specified by Ottani. An agreement was reached regarding the details and charges and was signed by the parties. (Plaintiffs' Exhibits C through E.)
The agreement provided that the Club would have exclusive use of the site from 12:00 PM to 11:00 PM on June 18 1994. The menu was to include all day service of hot dogs hamburgers and soft drinks, including frozen beverages; a lunch meal consisting of clam, chowder potato salad, baked beans corn-on-the-cob, chips and similar snack food, and watermelon; a taco bar, nacho bar, fajita bar, steamer and cherrystone clams, and raw vegetables and dip, all to be served from 2:30 PM to 5:30 PM; a dinner meal at 5:30 PM consisting of sausages and peppers barbecued boneless breast of chicken, spare ribs, vegetable primavera, roasted vegetables, baked potatoes, tossed salad and rolls; an 8:00 PM service of dessert including strawberry shortcake cheesecake and CT Page 13517 brownies; and at 8:30 PM cheese and crackers and other snack food.
The Club also was interested in and planned to operate cash bars serving alcoholic beverages. Gardiner informed Ottani that the farm had no liquor license and that the sale and providing of liquor was the Club's responsibility. The contract created no obligation on the part of the plaintiffs to obtain or assist the Club in obtaining a liquor permit.
The agreement required the Club to pay the plaintiffs at the rate of $25.50 per adult, $14.50 per child older than 5, and there was no charge for children under 6. The agreement also called for additional compensation of $900 for clowns and hayrides. (Plaintiffs Exhibit G.) The final head count came to 325 adults, 45 children over 5 years old, and 56 children under 6 years old. The total bill, including tax, came to $10,430.40 The Club paid a $3000 deposit upon entering the agreement and was obligated to pay half the total bill on June 4, 1994, and the remainder on the day of the event.
The Club never paid the second installment due on June 4, 1994. Ottani informed Gardiner that the Club would pay the entire outstanding balance on the day of the picnic. The plaintiffs reluctantly acceded to this delay in payment.
On June 18, 1994, the outing occurred as scheduled. The day was very warm with the temperature reaching 95°F. No liquor was sold or served by the Club because the Town of Canterbury, in which the farm is situated refused to issue a one-day liquor permit to the Club for that purpose. On the date of the event, Ottani refused to pay the balance owed under the terms of the contract, and that balance remains unpaid.
The plaintiffs have no food service permit and hires caterers to satisfy the food service portions of its contracts with its patrons. For the Club's picnic, the plaintiffs hired the Lobster Boat Family Restaurant as the caterer. This caterer charged me plaintiffs $5,845 for the services it rendered at the picnic. The food provided at the picnic cost the caterer around $4000.
The reason the Club declined to pay the installment due on June 4, 1994, was that the social committee members felt that the plaintiffs inadequately informed and assisted the Club with respect to obtaining the liquor permit from the town. The reason CT Page 13518 the Club declined to pay the outstanding balance on the day of the event was because of great dissatisfaction among Club members with the facilities at the site and especially the food service.
The shellfish that was to be provided from 2:30 PM to 5:30 PM was only available from 4:00 PM to 5:30 PM. The plaintiffs admit that its caterer failed to provide the fajita bar, the raw vegetables and dip, the sausages and peppers, the boneless chicken breasts, and the roasted vegetables. Roasted sliced potato was substituted for baked. Cheese danish was supplied instead of cheesecake. The ice for drinks ran out prematurely, and the lines for beverages were long and slow-moving. The chicken parts which were served were undercooked. The taco bar lacked meat, cheese beans, and taco shells. It consisted instead of nacho chips, salsa, and sour cream. The strawberries in the strawberry shortcake were only partly thawed.
Otherwise, the facilities and activities available met the terms of the contract. Again the court finds that the plaintiffs had no obligation under the agreement to insure that the Club would be able to obtain a liquor permit to operate cash bars. The absence of the fajita bar was caused, in part, by the Club's failure to make the payment to the plaintiffs on June 4, 1994. This payment would have compensated the caterer who was awaiting such compensation to purchase the fajita ingredients from his purveyors. By the time the caterer learned of the delay in payment, it was too late for the caterer to procure the fajita items needed in time for the picnic.
The plaintiffs assert a cause of action based on breach of express contract only. The plaintiffs allege full performance of their obligation under the agreement. No claim under quantum meruit, unjust enrichment, or implied contract is made. The reliance by the plaintiffs upon express contract as the basis for the defendants' liability precludes recovery on other theories.O'Keefe v. Bassett, 132 Conn. 659, 663 (1946).
A party cannot recover on a contract unless it has fully performed its obligations under that contract. DiBella v.Widlitz, 207 Conn. 194, 199 (1988); Ravitch v. Stollman PoultryFarms, Inc., 165 Conn. 135, 149 (1973); Automobile Ins. Co. v.Model Family Laundries, Inc., 133 Conn. 433, 437 (1947). Deviations from the contract terms which are slight, trivial, or inconsequential and which cause no loss to the other party are de minimis, and such performance still constitutes "full" CT Page 13519 performance permitting recovery. Pratt v Dunlap, 85 Conn. 180,184 (1912).
In the posttrial brief, the plaintiffs recognize that they did not fully perform the terms of the contract but rely instead on the doctrine of "substantial performance" to justify their claim for recovery under the contract. Our Supreme Court has long recognized exceptional circumstances where variation from the contract, more significant that the de minimis deviations described above, will still permit recovery under an express contract. In construction and building-related contract cases, even where a defendant has suffered economic loss by the plaintiff's failure to comply fully with the contract, the plaintiff may be entitled to recover upon the contract based on the doctrine of substantial performance. Daly and Sons v. NewHaven Hotel Co., 91 Conn. 280, 287 (1917); Vincenzi v. Cerro,186 Conn. 612, 615 (1982).
Preliminarily, the court must address whether the doctrine of substantial performance extends beyond construction contract cases. In Daly and Sons v. New Haven Hotel Co., supra, the Supreme Court stated the substantial performance rule as applied "to building contracts is an exception to that governing contracts generally" Id. (Emphasis added.) Clearly, as of 1917, the general rule barring recovery even in the face of substantial but not full, performance still applied in nonconstruction contract cases.
It should be noted, as an aside, that this general rule precluding recovery despite substantial performance does not prevent recovery on a legal theory other than breach of an express contract such as unjust enrichment or implied contract, if properly pleaded See, e.g. Automobile Ins. Co. v. Model FamilyLaundries, Inc., supra, 438 and 439. As noted above, however, in the present case the plaintiffs have alleged only breach of express contract.
The court's research discloses no Connecticut appellate level decision extending the substantial performance exception to the enforcement of contracts outside the building and construction area. There are appellate decisions which have recognized that the substantial performance exception has been in the past limited to construction contract matters. In 1947, in AutomobileIns. Co. v. Model Family Laundires, Inc., supra, 438 the Supreme Court stated, "[w]e have been confronted with a somewhat similar CT Page 13520 question with reference to the doctrine under which at least inbuilding contracts, a contractor is permitted under certain circumstances to recover where he has substantially but not fully performed". (Emphasis added.) As recently as 1988, our Supreme Court noted, "[i]n construction contracts, a builder's deviation from contract specifications, even if such a departure is conscious and intentional, will not totally defeat the right to recover in an action against the owner on the contract." AetnaCasualty and Surety Co. v. Murphy, 206 Conn. 409, 414 (1988). (Emphasis added.) From the context in which this last quote was made, one can infer that the substantial performance doctrine had not, as of 1988, reached beyond construction contract cases
An argument can be made that construction contract cases generally are distinguishable from other kinds of contract cases. In construction contract actions, the defendant who received partial performance usually can expeditiously engage another contractor to take over where the plaintiff-builder left off and correct defects or omissions in a straightforward manner. If a construction project is substantially completed, a builder would suffer a forfeiture and an owner a windfall if the builder were legally prevented from recovering for the labor and materials used to complete substantially the work. In such cases deviations from the specifications are endemic, predictable, and readily rectifiable. The measure of damages in such construction cases is easily ascertainable, as is the allocation of loss to each party.
In nonconstruction cases, however, noncompletion by the plaintiff will often make it, impossible to supply later what remained undone. The present case illustrates this point. It is unreasonable to expect the Club to have engaged others to serve the picnic menu as per the agreement when the specified food items were absent late, or ill-prepared. Such deficiencies are unamenable to rescue after the fact. Unlike construction matters where the status quo can be maintained for some time, a breach in food service will immediately and utterly defeat the aim of the original contract. Even though the vendor may have substantially fulfilled the agreement, what was lacking may destroy reasonable enjoyment for the vendee. Also, attempts to measure the loss to the defendant would appear to be futile. In nonconstruction case, the general rule barring recovery on the contract appears reasonable, especially in light of the; vendor's other avenues of recourse, such as unjust enrichment.
The court concludes that the substantial performance CT Page 13521 exception to the general rule precluding recovery without full performance by the plaintiff does not extend to cases such as the one subjudice.
In the alternative, even if the substantial performance exception is applicable, the plaintiffs have failed to prove, by a preponderance of the evidence that they substantially complied with the terms of their agreement with the Club.
Some factors which enter a determination as to whether a contract was substantially performed are set forth in Restatement (Second), Contracts, § 241, as follows:
 1. The extent to which the injured party will be deprived of the benefit of the contract.
 2. The extent to which the injured party can be adequately compensated for any deprivation.
 3. The extent to which the underperforming party will suffer forfeiture.
 4. The likelihood that the underperforming party can cure the deficiency.
 5. The extent to which the underperforming party's behavior comports with standards of good faith and fair dealing.
In the present case, the deviations from the agreed-upon menu were significant. Although the lack of a fajita bar was partly attributable to the Club's own delinquency, the other deficiencies in food service were glaring. The Club members and guests paid to attend an outing with an elaborate menu. They were deprived of the variety of food that was promised, some of the food was offered belatedly and for a shorter time than specified, and major items were missing. In some instances, the food was poorly prepared. These deficiencies are incurable. While the plaintiffs may suffer some economic loss, they retain the $3000 deposit. They may be able to turn to the caterer they hired to bear the brunt of the loss. The court finds that the; plaintiffs' performance of the agreement was less than substantial
Therefore, the court finds for the defendants on the complaint.
Turning to the defendants' counterclaims, in the first count CT Page 13522 the defendants allege the plaintiffs have breached the express contract. The same general rule which bars recovery by the plaintiffs applies with equal vigor to the defendants' claim. The defendants failed to make the scheduled payments on June 4, 1994, and nonpayment contributed, in part, to the plaintiffs' failure to satisfy the contract terms.
The court finds for the plaintiffs on the first count of the defendants' counterclaim.
Concerning the second count of the counterclaim, the defendants allege that the plaintiffs misrepresented the availability of a liquor permit, the suitability of the plaintiffs' farm to hold, the Club's outing, and the quality of the food and service to be provided. The court finds that the defendants have failed to meet their burden of proving, by a preponderance of the evidence, any of the misrepresentations alleged. As noted above, the court has found that the plaintiffs', agent never represented that the plaintiffs could or would provide or assist the Club in obtaining a liquor permit. The court finds that the plaintiffs' property was suitable for the outing planned. The court also finds that the plaintiffs reasonably believed that the caterer they hired would satisfy the terms of the contract with respect to the food service, and that the plaintiffs neither intentionally nor negligently misrepresented the quality of food to be served.
Judgment may enter for the defendants on the complaint and for the plaintiffs on the counterclaim.
Sferrazza, J.