[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This case was instituted by the plaintiff, Salvatore Nicotra ("Nicotra") in a two count amended complaint, dated February 25, 1998, against the defendant corporation, Plug-In Storage Systems ("PSSI") seeking Specific Performance of a written contract; money damages; interest; an accounting; attorney's fees and such other relief the court deems appropriate.
The First Count alleges that on April 17, 1997 Nicotra and PSSI agreed in writing, ("The Agreement") that Nicotra would continue to serve as President of PSSI and that PSSI would pay him $80,000 annually for his services. The Agreement, Exhibit A[1] was for a period of one year from April 1, 1997.
John Anthony Figurelli, ("Figurelli"), retired Chief Financial Officer and President of Sargent Co., who does consulting work for presidents of companies tried to work out a written agreement between Ralf P. Maroney ("Maroney") CEO of PSSI. In the year 1996 Nicotra came on board to work for PSSI without a written contract. Nicotra testified that originally the company was a "trilogy type" operation with Maroney and Schmidt, Vice President in charge of sales and himself. In June 1996 Schmidt was let go and Nicotra took over the duties of Schmidt. Nicotra became President of PSSI around that period. The sales personnel reported to Nicotra.
PSSI is a telecommunications storage systems company. PSSI produces a metal cabinet with shelving that can receive circuit boards. It is a Florida corporation with warehouse space in Virginia. Sales are booked in Orange, Connecticut and shipments are made out of the Virginia warehouse. Nicotra testified that the tenor of the relationship between him and Maroney was still a CT Page 13894 trilogy with Figurelli as the financial officer. On July 1, 1997 Nicotra resigned. (Exhibit 1).
Nicotra claims under page 4 of his resignation "Monies Due Sal"
(a) PSSI owes Sal the balance of $10k balance due is $5,500.00.
(b) PSSI owes Sal 25% of 1st quarter profit 1997.
(c) PSSI owes Sal 25% of year end profit for 1996.
It is ironic that page 5 recites 100k plan for year end 1997.
"Outline the plan if you want me to stay on."
The court infers that the question on page 5 of Exhibit 1 relates to an increase in salary.
Page 3 of Exhibit 1 calls for a payment due on the car note which has been satisfied.
 I
Specific Performance
The resignation dated July 1, 1997 cites on page 2 "A cashiercheck will be presented to PSSI or Ralf Maroney for $14,476.00 upon receipt of stock certificates or certificate for 10%ownership in PSSI. Such claim arises out of the written agreement under paragraph 8. Paragraph 8 recites the 10% stock option mustbe exercised by June 1, 1997. There was conflicting testimony by Nicotra and Maroney as to whether there was an extension of time verbally made by Maroney as to when it was to be paid. The evidence given by Figurelli is uncontroverted. Figurelli brought on board by the accounting firm of Simone, Scillia, Larrow and Dowling ("SSLD") shortly after the prior accounting firm had left testified that the Employment Agreement Exhibit A was a principal issue. The parties had gone through several drafts. The relationship between Nicotra and Maroney had become rocky. Figurelli tried to put together an agreement they could both live with. To his surprise he came in one day and the agreement was signed on April 17, 1997. Maroney had requested Figurelli to work out an agreement. Figurelli testified that paragraph 8 was the CT Page 13895 easiest part of the agreement to work out because PSSI was experiencing cash flow problems. Maroney had asked Figurelli to go down to look at the inventory but he never did because the was looking more to accounts receivable.
Figurelli thought the differences between Nicotra and Maroney were irreconcilable.
Figurelli testified that Nicotra approached him about the stock options and indicated he did not have the money. Figurelli even suggested he would loan Nicotra the money. Figurelli went to Maroney about Nicotra's concerns about the stock. Figurelli testified that he told Nicotra "you are not getting the stock unless you have the money." Figurelli testified that Maroney's position was "if he pays the money he gets the stock." Nicotra indicated that it was getting close to June 1, but that he did not have the money. Figurelli under cross examination testified Nicotra never told him he made an offer to pay by check. Figurelli also left in July. Nicotra never accepted his offer to loan him the money to buy the stock.
PSSI argues "An option to purchase as is the case here for the stock under paragraph 8 of the Agreement that the plaintiff has the burden of showing his right in equity and good conscience for the relief sought. In the case of DiBella v. Widlitz,207 Conn. 194 (1988) cited by PSSI the court held at page 194 "We have repeatedly held that a trial court may justifiably withhold equitable relief from a buyer who, put to his proof on such allegation fails to satisfy his burden of demonstrating his financial ability to purchase the property," citations omitted. In this case PSSI demonstrated that Nicotra whose check was placed in evidence (Exhibit C), did not have sufficient funds in the bank to cover the check. (Exhibit 2). Further, Nicotra failed to meet the time limitation to purchase the stock. The option period had expired to purchase the stock. Maroney denied any extension of time for the date to purchase. The court accordingly denies the prayer for relief to order PSSI to transfer 10% of the stock as set forth in paragraph 8b.
 II
Nicotra alleges further, under the express terms of paragraph 7, that he is entitled to receive twenty-five (25%) of PSSL's net profits as determined by an audited statement for the years 1996 and 1997, by Simione, Scillia, Larrow and Dowling ("SSLD"). The CT Page 13896 agreement, Exhibit A under paragraph 5, specifically recites that the audit would be conducted by SSL. PSSI refers the court to Exhibit 3 which was the audit ordered by the court after a hearing on an application for a prejudgment remedy (PJR). The order dated April 6, 1998 provides that the defendant PSSI audits the years 1996 and 1997 at defendant's expense (Downey, J. 4/13/98; pleading #107). A further history of this case as on file pleading #110 seeks a contempt asserting that SSLD did not comply with the audit ordered since SSLD did not take physical inventories for which they were present and SSLD had expressed "the scope of work done by SSLD was not sufficient to enable us (SSLD) to express an opinion on these financial statements." This motion for contempt was denied, Downey, J. 8/30/99, pleading #110.
Prior to the services of SSLD, PSSI had a different accounting firm in 1995. The first statement SSLD prepared for PSSI was March 3, 1997. (Exhibit G). Joseph Natarelli ("Natarelli") a certified public accountant and member of SSLD was assigned by SSLD as the principal accountant for PSSI account with approval of Paul Rhone of same firm. Natarelli testified that they received all information from the client, in this case PSSI, which included the General Ledger (list of accounts), Sales Journal, Purchase Journal, Cash Receipts and Cash Disbursement Everything is done on the company computer system except Inventory and Sales Journal. The Profit and Loss Statement (Exhibit G), was done March 3, 1997 prior to Nicotra's resignation. Exhibit 3 was done September 1998 after this court proceeding. Natarelli testified that there are three types of Reports.
1. A compilation management's numbers put into balance sheet.
2. Review Level opinion based on inquiry look at relationship of various accounts of company.
3. Audit confirm all information (not done in a Review Level)
 Use Transaction Testing Internal Controls Confirmation of Accounts Accounts Payable Physical Inventory (accountant is present)
A physical inventory was not done in the Audit (Exhibit 3). CT Page 13897 Exhibit 3 is an audited statement with a denial of opinion. The statement Exhibit 3 is the highest level of assurance but because the accounting firm did not physically observe the inventory "they could not express an opinion on the financial statements due to the inability to apply sufficient auditing procedures to the company's inventory." (See Exhibit E). In Exhibit E attached to the engagement agreement by SSLD Exhibit A sets forth the proposed language they would be able to place in the report of Exhibit 3. (Third paragraph of Exhibit 3). The audit Exhibit 3 does show the most accurate figures but could not give an opinion. Douglas Farrington ("Farrington") supervises tax area of SSLD. As a result of the court ordered audit PSSI was required to file amended tax returns. For the year of 1995, done by a prior accounting firm, additional taxes amounted to State of Connecticut $30,000 plus and Internal Revenue Service $100,000. The 1996 amended return (Exhibit J) additional taxes were minimal: State of Connecticut less than $1,000 and federal taxes less than $5,000. For the year 1997, prepared and signed by Farrington Exhibits K and Exhibit L there was no additional taxes due. Farrington testified the substantial impact on the tax returns related back to 1995.
Paul Rohan ("Rohan") the quality control partner of SSLD is responsible for the second review of all statements prepared by the firm including the review of opinion letter. Rohan makes the determinations of the type of letter that should be given with the report. Rohan testified Exhibit G was a review of figures given to Natarelli by client. Rohan and his staff did an analytical test. Rohan prepared and crafted the engagement letter in Exhibit 3. He faxed samples of what would be contained in engagement letter and language put in report that would state the denial of opinion because of not observing physically the inventories. Rohan testified that they perform an audit even as to inventory but to conform to professional standards of auditing they are required to issue a denial of opinion because they were not physically present. Rohan has outstanding credentials in the accounting field. He testified that it is always necessary to make some physical inventory but because they were unable to do so in this case, is the reason they denied an opinion.
When questioned as to the increase of salaries Rohan testified that the increases were not out of line in view of the increase in sales.
Rohan testified nobody could give an opinion without the CT Page 13898 denial under the circumstances of this case without violating the rules of professional conduct.
The court is completely satisfied that the report Exhibit 3 was completed and performed in the highest professional standards of accounting. The court further finds that any other accounting is unnecessary in this case since the one submitted was already done under a court order. The audit Exhibit 3 was not performed until September 16, 1998. The accounting fairly and reasonably reflects the profits and losses of the company during 1996 and 1997. The plaintiffs attack on expenditures were not in the control of Nicotra. As pointed out the increase in salaries were justified.
The audit shows the most accurate figures for the inventory and SSLD could not give an opinion.
Exhibit 3 shows that there were no profits for the years of 1996 and 1997. Accordingly, under the written agreement the plaintiff has failed to meet his burden of proof that he is entitled to receive a percentage of net profits under paragraph 5. Nicotra agreed that the SSL audit would determine the net profits; they found none. (See page 3 of Exhibit 3).
Paragraph 7c of the complaint seeks payment of an amount equal to three percent (3%) of 1997 first quarter sales over total break-even sales as set forth in paragraph 9 of the Agreement.
Paragraph 9 of Exhibit A provides as follows:
 "An amount equal to 3% of first Quarter sales over total break even sales will be paid. The number was originally estimated to be $450,000.00. This number will be audited by SSL to determine its validity. It is estimated that current break even sales equal $600,000.00. No other payments will be made for quarterly sales."
The plaintiff Nicotra met with Natarelli who prepared Exhibit G dated March 3, 1997. Natarelli testified he received all the financial data from Nicotra. Natarelli testified that the sales figures included shipping expenses even though billed to customers. Exhibit 3 shows sales figures for the entire year of 1997 in the amount of $3,401,844. From the audit done in 1998 for figures for 1997, Natarelli could not tell what the breakeven CT Page 13899 meant in the contract nor was he even asked. Nicotra placed in evidence Exhibit B showing sales by month starting January 1, 1997 through June of 1997. Exhibit B is a computer print out from the records of PSSI. The first quarter sales amount to $919,528. Nicotra argues that PSSI Maroney did not dispute the mechanics for the calculation in his testimony and accordingly that Nicotra is entitled to the sum of 3% over the total sales less $450,000 or $14,082.87.
The court's reading of paragraph 9 is that the breakeven equals $600,000 as set forth in the agreement. Accordingly, Nicotra is entitled to 3% of total sales of $919,528 less $600,000 breakeven which adds up to $319,528. PSSI's argument under paragraph C of its Post Trial Brief is not persuasive and unavailing. Maroney gave no disputing evidence. Accordingly the court finds that Nicotra is entitled to the sum of $10,585.84.
As to the First Count the court finds that Nicotra is to recover the sum of $10,588.84 under paragraph 7c of the complaint.
The specific performance prayed for under paragraph 7b is denied.
The money damages claimed under paragraph 8a judgment in favor of the defendant PSSI.
The court has already discussed the prayer for an accounting which it denies.
Second Count: This count seeks payment for vacation time based upon PSSI's custom of providing for paid vacations. PSSI points out in its brief the vacation time that Nicotra enjoyed in 1996: one week in Greece also an employee's cruise of one week.
Nicotra further testified he took a cruise for one week when he had resigned but was nevertheless paid. PSSI argues that an additional three days in Florida was taken by Nicotra on unrelated business for PSSI. PSSI argues that Nicotra has already received 2 1/2 weeks of vacation. Nothing is provided for in the written agreement as to paid vacation and this court will not rewrite the parties written understanding finally reduced to writing on April 17, 1997. Accordingly, judgment may enter in favor of PSSI on the Second Count. CT Page 13900
The plaintiffs prayer for relief seeks:
1. Specific Performance which is denied.
2. Money Damages: The plaintiff may recover $10,585.84 plus interest of 10% from July 1, 1997 to July 1, 1999 in the amount of $2,117.00 for a total of $12,702.84 plus court costs.
Request for attorney's fees is denied. Nothing in Agreement to provide for fees.
Request for Accounting denied.
Nicotra failed to brief or claim any balances due under paragraph 4, paragraph 7 or paragraph 10 of Exhibit A. The court deems that, claims under these provisions of the contract are abandoned, or satisfied.
Frank S. Meadow Judge Trial Referee